Joe BAKER, Appellant,

v.

The CITY OF OTTUMWA and Aaron Dannull, Appellees.

No. 96–32.

Supreme Court of Iowa.

March 26, 1997.

Glenn L. Norris and George F. Davison, Jr. of Hawkins & Norris, Des Moines, for appellant.

Thomas J. Logan and Hugh J. Cain of Hopkins & Huebner, P.C., Des Moines, for appellee City of Ottumwa.

John A. Pabst of Pabst Law Firm, Albia, for appellee Aaron Dannull.

Considered by LARSON, P.J., and NEUMAN, SNELL, ANDREASEN, and TERNUS, JJ.

NEUMAN, Justice.

This appeal stems from an accident that occurred at a water park owned by the City of Ottumwa. Plaintiff Joe Baker, a patron on the park's speed slide, suffered a serious eye injury when defendant Aaron Dannull, another park patron, negligently interfered with Baker's clear path down the slide. Baker sued the city, as well as Dannull, but the city succeeded on its summary judgment claim to immunity under Iowa Code section 670.4(12) (1995). The case proceeded to trial against Dannull, and the jury returned a verdict for Baker in the sum of $10,229.21.

Baker appeals, claiming the court erred by (1) dismissing his claims against the city, (2) permitting Dannull to claim the city's conduct was the sole proximate cause of Baker's injury, and (3) refusing to grant a new trial based on the alleged inadequacy of the jury's verdict. Dannull cross-appeals, challenging the court's refusal to permit the jury to allocate a percentage of fault against the city. Finding no error, we affirm on both appeals.

## I. *Background Facts and Proceedings.*

The City of Ottumwa owns and operates "The Beach Ottumwa," a municipal water park featuring various swimming pools and waterslides. This appeal concerns the "200' Speed Slide." To ride the slide, a patron climbs a high platform to access an entry chute or "flume." A lifeguard posted on the platform directs the rider to lie back so that the rider has no view of the bottom of the slide. At the lifeguard's cue, the rider plunges down an eighty foot, near-vertical slide into a horizontal flume. Water filling the flume slows the rider's motion, thus ending the ride. The ride lasts three-to-five seconds.

On June 24, 1993, Baker, who was then nineteen years of age, rode the speed slide several times without incident. On Baker's final descent, however, twelve-year-old Dannull stuck his foot over the side wall of the horizontal flume to test the temperature of the water. As Baker sped by, Dannull's heel struck him in the eye. The record reveals that Dannull was in an unauthorized area; the lifeguard stationed at the bottom of the slide evidently was not paying attention.

Baker's injury required stitches above his left eye followed by surgery to correct a fracture to the left orbital floor. The surgery involved securing a plate to the bone of the orbital rim with two small screws. Dr. Keith Carter, the ocuplastic surgeon who performed the procedure, reported a successful operation with Baker only experiencing slight double vision on extreme upgaze. Although Baker complained of sporadic headaches and twitching in his left eye following the operation, Dr. Carter believed the symptoms were not related to the eye injury.

Baker sued the City of Ottumwa, and the city cross-petitioned against Dannull. The city then moved for summary judgment, citing an exemption from liability under Iowa Code section 670.4(12) for tort claims related to swimming pools. Baker resisted the motion, arguing the statute unconstitutionally denied him equal protection and due process of law. The district court granted the motion, dismissing Baker's suit against the city.

Baker successfully moved to amend his petition to assert a direct claim against Dannull. Dannull then attempted to file a cross-claim against the city, but it was dismissed on the city's motion.

Baker and Dannull proceeded to trial. Baker moved in limine to preclude Dannull from asserting as an affirmative defense that the negligence of the city caused Baker's injuries. Over Baker's objection, the court ruled that Dannull could attempt to prove the city was the sole proximate cause of Baker's injuries. The court instructed the jury that to prevail on this defense, Dannull would have to prove that the lifeguards were negligent and their conduct was the sole proximate cause of Baker's injuries.

The jury returned verdicts finding Dannull's fault proximately caused Baker's damages and the City of Ottumwa was *not* the sole proximate cause of Baker's injuries. The jury found no fault by Baker. It awarded Baker $8679.21 for past medical expenses, $1250 for past pain and suffering, and $300 for past loss of function of the body. No award for future damages was made.

Baker moved for a new trial, claiming the jury award was inadequate as a matter of law and the district court erred in instructing the jury on the sole proximate cause defense. Dannull moved for judgment notwithstanding the verdict, arguing that dismissal of the City of Ottumwa unfairly prevented him from assigning it a percentage of fault despite its immunity from liability. Both parties' motions were denied. Baker appealed and Dannull cross-appealed.

## II. *Issues on Appeal.*

### A. *Governmental immunity.*

Baker's appeal centers on his claim the court erred when it interpreted section 670.4(12) to exempt the city from liability. He maintains the statute has no applicability when, as here, the claim relates to negligent supervision of municipal employees rather than failure to comply with swimming pool regulations. He also asserts application of the statute unconstitutionally denies him equal protection and due process. *See* U.S.

Const. amend. XIV; Iowa Const. art. I, §§ 6, 9.

These questions reach us on appeal from summary judgment. Because the only dispute concerns legal consequences flowing from undisputed facts, our review is limited to whether the district court correctly applied the law. *City of West Branch v. Miller,* 546 N.W.2d 598, 600 (Iowa 1996). As to Baker's constitutional challenge, our review is de novo. *Des Moines Register & Tribune Co. v. Dwyer,* 542 N.W.2d 491, 495 (Iowa 1996).

Iowa Code chapter 670, which governs tort liability of governmental subdivisions, subjects every city to liability for the torts of its officers and employees unless such torts fall within exemptions spelled out in section 670.4. *See* Iowa Code § 670.2; *City of West Branch,* 546 N.W.2d at 600. At issue here is section 670.4(12) which states that the liability imposed by section 670.2 shall have no application to

> [a] claim relating to a swimming pool or spa as defined in section 135I.1 which has been inspected by a municipality or the state in accordance with chapter 135I, or a swimming pool or spa inspection program which has been certified by the state in accordance with that chapter, whether or not owned or operated by a municipality, unless the claim is based upon an act or omission of an officer or employee of the municipality and the act or omission constitutes actual malice or a criminal offense.

Iowa Code § 670.4(12).

The immunity authorized by section 670.4(12) is made applicable to a waterslide by definition found at Iowa Code section 135I.1(4): " 'Swimming pool' means an artificial basin and its appurtenances, either constructed or operated for swimming, wading, or diving, and includes a swimming pool, wading pool, *waterslide,* or associated bathhouse." (Emphasis added.)

Baker's first argument—that the exemption relates to health standards, not negligent lifeguards—is defeated by the broad language of section 670.4(12). By its very terms, the exemption applies to any "act or omission" that falls short of actual malice or a

crime. Iowa Code § 670.4(12). This language precludes Baker's attempt to narrow the statute's focus. Nothing in the statute immunizes negligence in the performance of pool inspections while preserving claims against negligent lifeguards. Clearly the suit before us fits the broad classification of "claim relating to a swimming pool," *see id.,* and the district court was correct in so ruling.

Baker claims in the alternative that the statute is constitutionally infirm. He argues that section 670.4(12) denies municipal swimming pool accident victims the legal protections afforded persons who are injured at other places of entertainment and recreation. Moreover Baker contends the statute prevents him from enjoying a significant property right—the right to assert his legal claim against the city in court. Like the district court, we find no merit in these contentions.

We begin by noting the district court properly applied a rational basis analysis to Baker's equal protection claim because no suspect classification or fundamental right is implicated. *See Glowacki v. State Bd. of Med. Exam'rs,* 501 N.W.2d 539, 541 (Iowa 1993). Under the rational basis test, constitutional safeguards are offended only if the classification rests on arbitrary grounds unrelated to the achievement of a legitimate state interest. *Id.; Suckow v. NEOWA FS, Inc.,* 445 N.W.2d 776, 779 (Iowa 1989). Legislative acts are cloaked with a presumption of constitutionality, even when application of the statute results in some inequality. *Suckow,* 445 N.W.2d at 778. A discriminatory classification is, therefore, permissible "if any state of facts reasonably may be conceived to justify it." *Id.* (quoting *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961)).

Here the district court believed the legislature enacted the swimming pool exemption "to foster community recreational activities and water safety training." We agree that these are legitimate governmental interests and the statute furthers the interests in a rational way.

Baker contends on appeal that even assuming public water safety is a legitimate

governmental interest, operating a water park is nevertheless a proprietary—not governmental—function. The distinction, however, is immaterial to our inquiry. By its terms, section 670.2 governs municipal tort liability "whether arising out of a governmental or proprietary function."

■ Finding no equal protection violation, we turn to Baker's due process argument. We said in *Suckow,*

> [w]here access to the judicial process is not essential to the exercise of fundamental rights the state will be free to allocate access to the judiciary machinery or any system or classification which is not totally arbitrary.

*Suckow,* 445 N.W.2d at 778 (quoting 2 Ronald D. Rotunda et al., *Constitutional Law: Substance and Procedure* § 17.10, at 307 (1986)). As we have already noted, Baker seeks to protect his "right" to sue the city, a matter of economic—not fundamental—interest. Suits against the government may be maintained only to the extent immunity has been expressly waived by the legislature. *Builders Transp., Inc. v. State,* 421 N.W.2d 539, 542 (Iowa 1988). Without a "right" to vindicate, Baker's claim to due process protection must fail. *See id.* The district court was correct in so ruling.

### B. *Sole proximate cause.*

■ Over Baker's objection, the court instructed the jury that if it found the negligent conduct of the city's lifeguards to be the *sole* proximate cause of Baker's injuries, the jury was required to find the fault of Dannull, if any, *not* a proximate cause of Baker's damages. Dannull, of course, was unsuccessful in this defense. Baker nevertheless claims on appeal that the court's submission of the instruction was erroneous and effectively "creat[ed] a duty where previously the court had found none existed," thus entitling him to a new trial.

■ Baker's argument misapprehends the theory underlying the sole proximate cause defense. "Sole proximate cause means the *only* proximate cause." *Johnson v. Interstate Power Co.,* 481 N.W.2d 310, 323 (Iowa 1992). The defendant who asserts the defense bears the burden of proving it, for

the concept rests on the notion that some third party or other independent event was the sole cause of the plaintiff's injuries. *Sponsler v. Clarke Elec. Coop., Inc.,* 329 N.W.2d 663, 665 (Iowa 1983). The defense is incompatible with the doctrine of comparative fault because, where it applies, the defendant is effectively insulated from liability. *Johnson,* 481 N.W.2d at 324; *Sponsler,* 329 N.W.2d at 665.

■ Baker argues, essentially, that it was unfair and incorrect to give Dannull the opportunity to shift the blame to the city's employees when, by virtue of the court's earlier ruling, the city was immune from liability. But the sole proximate cause defense applies whether or not the allegedly culpable party is joined in the action. *Sponsler,* 329 N.W.2d at 665. Any event not chargeable to the defendant, including an "act of God," can insulate the defendant from liability. *Id.*

Ample evidence in the record supported the submission of the sole proximate cause instruction here. No ground for reversal appears. *See Collister v. City of Council Bluffs,* 534 N.W.2d 453, 454 (Iowa 1995) (when jury instruction challenged on appeal, question is whether instruction correctly states the law and is supported by substantial record evidence).

### C. *Adequacy of jury verdict.*

■ Baker moved for new trial on the ground the jury's $10,229.21 verdict was inadequate as a matter of law. The court overruled the motion, expressly finding the jury's award "within the parameters of the evidence." On our appellate review, we apply an abuse-of-discretion standard. *Foggia v. Des Moines Bowl–O–Mat, Inc.,* 543 N.W.2d 889, 891 (Iowa 1996). The test is

> "whether the verdict fairly and reasonably compensates the injury the party sustained." Although evidence presented at trial may justify a higher damage award, this alone does not control. The key question is whether after examining the record, "giving the jury its right to accept or reject whatever portion of the conflicting

evidence it chose, the verdict effects substantial justice between the parties."

*Id.* (citations omitted).

Baker claims the damages awarded by the jury bear no reasonable relation to the injuries he suffered and thus are inadequate as a matter of law. In particular Baker contends the jury ignored evidence he offered about permanent scarring and the future pain and suffering he anticipates. The jury's failure to properly evaluate these elements, Baker contends, was unjust.

The jury's verdict compensated Baker for his medical expenses, his past pain and suffering, and past loss of function. The record reveals no loss of wages, and the jury could find Baker's scarring minimal. Baker's treating physician testified that Baker would require no further treatment, that he foresaw no future limitations in use, and that Baker's claimed headaches and eye twitching were unrelated to the eye injury. Although Baker countered this medical evidence with his own assessment of the pain he has endured, the jury was free to accept or reject the evidence as it saw fit.

We believe the jury's verdict is supported by the record and, though perhaps modest, is far from being so small as to shock the conscience. *Cf. Witte v. Vogt,* 443 N.W.2d 715, 716–17 (Iowa 1989). We find no basis upon which to reverse the trial court for refusing to grant a new trial.

### III. *Cross-appeal.*

As already discussed, Dannull was permitted at trial to argue that negligence of the city's employees was the sole proximate cause of Baker's injuries. But he was prevented from seeking a comparative allocation of fault against the city because of its dismissal, pretrial, from the suit. Dannull concedes that the court's ruling on the city's immunity meant the city was not a "party" for purposes of comparing fault. *See* Iowa Code § 668.2 (defining "party" to include claimant, person named as defendant, a person released pursuant to section 668.7, and a third-party defendant); *Spaur v. Owens–Corning Fiberglas Corp.,* 510 N.W.2d 854, 862 (Iowa 1994).

Dannull nevertheless asks this court on cross-appeal to revisit its prior cases concerning chapter 668 in order to draw a distinction between "fault" and "liability." The distinction, Dannull argues, would foster a fairer adjudication where, as here, two parties arguably share the fault but one is statutorily sheltered from liability.

We have repeatedly rejected the "fault siphoning" Dannull urges. *See, e.g., Kragel v. Wal–Mart Stores, Inc.,* 537 N.W.2d 699, 706 (Iowa 1995); *Spaur,* 510 N.W.2d at 863; *Pepper v. Star Equip., Ltd.,* 484 N.W.2d 156, 158 (Iowa 1992). There can be little doubt that Dannull was disadvantaged at trial by his inability to "siphon off" some portion of the fault for Baker's injuries. But our comparative fault statute makes no allowance for the interpretation Dannull seeks. *See Selchert v. State,* 420 N.W.2d 816, 820 (Iowa 1988) (rejecting an expansive reading of section 668.2 to include unnamed but "indispensable" parties); *Payne Plumbing & Heating Co. v. Bob McKiness Excavating & Grading, Inc.,* 382 N.W.2d 156, 159 (Iowa 1986) (rejecting concept of "phantom" defendants). The same immunity that barred Baker from seeking recourse against the city also precludes defendant Dannull from reducing his liability by factoring the city's alleged fault into the equation. The rule, though potentially harsh, recognizes that where special defenses shield a codefendant from judgment, the fault at issue should be borne—not by the plaintiff—but by the defendant against whom plaintiff has a viable claim. *Spaur,* 510 N.W.2d at 863. The district court was correct in rejecting Dannull's argument to the contrary.

**AFFIRMED ON APPEAL AND CROSS–APPEAL.**