Richard KUTA and Judith Kuta, Administrators of the Estate of Bradley R. Kuta, Deceased, Appellants,

v.

Virgil Alexus NEWBERG, Sr., Appellee.

No. 97–1605.

Supreme Court of Iowa.

Sept. 9, 1999.

E.S. Bikakis of Bikakis, Arneson & Karpuk, Sioux City, for appellants.

Maurice B. Nieland and Matthew T.E. Early of Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, Sioux City, for appellee.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, SNELL, and CADY, JJ.

LARSON, Justice.

Richard and Judith Kuta sued Virgil Newberg for the wrongful death of their adult son, Brad. A jury returned a verdict for the plaintiffs. On the defendant's motion, the court ordered a new trial or a remittitur of the damages. Kutas appealed, and Newberg cross-appealed. We affirm on both appeals.

## I. Facts and Judicial Proceedings.

Brad Kuta was by all accounts a successful and dedicated student, an athlete, and a young man with great potential. He was twenty years old and had completed his second year in civil engineering at the University of Iowa with excellent grades at the time of his death. He was working for a survey crew with the Iowa Department of Transportation (DOT) in the summer of 1995. The survey crew was working on two northbound lanes of Highway 75 near Merrill, Iowa. Brad was standing on the centerline between the two northbound lanes with his back to oncoming traffic when he was struck. There was conflicting evidence about what safety signals the survey crew used. Witnesses testified the DOT crew placed two warning signs, one on each shoulder of the northbound lanes of Highway 75, 500 to 900 feet from the mile marker where the crew was working. It is undisputed that the crew did not use flaggers or set up cones to channel traffic to one lane. DOT witnesses testified they parked a truck with a flashing yellow beacon on the west shoulder of the northbound lanes. Newberg was traveling forty-five to fifty miles per hour and was 100 feet behind a van when he struck Brad. Brad sustained severe injuries but remained conscious for a short time. A helicopter took him to Marian Health Center in Sioux City, but doctors were unable to save him due to the extensive loss of blood. He died within an hour after Newberg's vehicle hit him.

The Kutas sued for wrongful death, parental consortium, and punitive damages. Newberg asserted comparative fault and sole proximate cause as defenses. The district court sustained Newberg's motion for partial summary judgment on the consortium claim and directed a verdict for Newberg on the Kutas' punitive-damage claim. The jury found Newberg eighty percent at fault and Brad twenty percent. It set damages at $1,250,000, which, reduced by the twenty percent fault attributed to Brad, resulted in a net verdict of $1,000,000.

The court ordered a new trial or reduction to $486,400 damages for wrongful death. (It did not modify the awards for medical and funeral expenses, and those items are not involved on the appeal.)

## II. The Issues.

The plaintiffs assert error in: (1) the remittitur order, (2) the submission of sole proximate cause as a defense, (3) assessment of fault to the victim, (4) the summary judgment on the plaintiffs' consortium claim, (5) the directed verdict on the punitive-damages claim, and (6) several of the court's evidence rulings. The defendant raises an issue on his cross-appeal regarding the form of the court's instruction on sole proximate cause and a ruling on evidence.

## III. The Order for Remittitur.

One of the principal issues on appeal is the district court's order requiring a new trial or the plaintiffs' acceptance of a remittitur. The jury awarded the plaintiffs $260,030 for the present value of Brad's estate, $3055 for funeral expenses, $4915

for predeath medical expenses, $582,000 for predeath physical and mental pain and suffering, and $400,000 for predeath loss of function of the mind and body. The total was $1,250,000.

The district court ordered a new trial or the remittitur of damages in excess of $486,400, reducing pain and suffering to $300,000 and loss of function of mind and body to $40,000 while leaving the other portions of the award intact. The court found the verdict of $982,000 for Brad's pain and suffering and his predeath loss of use of mind and body "shock[ing to the] court's conscience and sense of justice" and unsupported by the evidence because Brad remained conscious for only a few minutes after the accident. Second, the court found passion and prejudice could have prompted the verdict. It concluded the gruesome injuries could have aroused the jury's passion. It also noted Newberg, who was an elderly man, was inattentive at times and occasionally slept during the trial, possibly prejudicing the jury against him. Newberg argues that the court should have reduced the verdict even further—to $12,000 or $1000 for each minute that, the defendant claims, Brad remained conscious.

The Kutas argue the jury's original award was supported by the evidence. They point to other portions of the verdict to illustrate that the award was not exorbitant. For example, they note that the jury allocated $260,030 in damages to Brad's estate, which is only slightly higher than Newberg's own expert's valuation of $259,309 and significantly lower than the plaintiffs' expert's valuation of $1,382,802. Also, they point out, the jury awarded less than the stipulated funeral and predeath medical expenses.

█ We review a ruling on a motion for new trial for an abuse of discretion. *See Foggia v. Des Moines Bowl-O-Mat, Inc.*, 543 N.W.2d 889, 891 (Iowa 1996); Iowa R. App. P. 14(f)(3). In reviewing claims of excessive damages, we view the evidence in the light most favorable to the plaintiff. *Olson v. Prosoco, Inc.*, 522 N.W.2d 284, 292 (Iowa 1994). A court must not "disturb a jury verdict for damages unless it is 'flagrantly excessive or inadequate, so out of reason so as to shock the conscience, the result of passion or prejudice, or lacking in evidentiary support.'" *Id.* (quoting *Harsha v. State Savings Bank*, 346 N.W.2d 791, 799 (Iowa 1984)); *see also Hurtig v. Bjork*, 258 Iowa 155, 164–65, 138 N.W.2d 62, 68 (1965) (Becker, J., dissenting) (cautioning judges not to substitute their opinions for juries' fact-findings when ordering remittiturs).

█ An abuse-of-discretion standard is appropriate because the trial court has had the advantage of seeing and hearing the evidence; in applying that standard, other cases are of limited value. *See Rees v. O'Malley*, 461 N.W.2d 833, 840 (Iowa 1990) ("In determining whether the damage award is excessive, we must abide by the principle that each case depends upon its own facts, and precedents are of little value."). Nevertheless, we have compared other cases. *See Pagitt v. City of Keokuk*, 206 N.W.2d 700, 706 (Iowa 1973) ("After saying, as we frequently have, that verdict comparisons are meaningless in cases of this kind, we nevertheless almost always make them.").

In *Kiner v. Reliance Insurance Co.*, 463 N.W.2d 9, 15 (Iowa 1990), we reversed an order for remittitur because the district court made no findings that the verdict was the result of passion or prejudice or lacked evidentiary support. Unlike *Kiner*, the district court in this case concluded the verdict was not supported by the evidence. As Newberg points out, Iowa's appellate courts often affirm trial courts' orders of remittitur or order remittiturs on appeal. *See, e.g., Giarratano v. Weitz Co.*, 259 Iowa 1292, 1314, 147 N.W.2d 824, 837 (1967) (reducing a $75,000 award to a seventeen-year-old boy's estate to $50,000); *Hurtig*, 258 Iowa at 155, 138 N.W.2d at 62 (upholding trial court's order remitting a $28,000 verdict for the death of a six-year-

old girl to $12,000); *Tedrow v. Fort Des Moines Community Servs., Inc.*, 254 Iowa 193, 204, 117 N.W.2d, 62, 68 (1962) (reducing a verdict from $22,500 to $15,000 for the death of a twelve-year-old girl).

■ The question is whether the remittitur order was an abuse of discretion, in view of the plaintiffs' claim that the award should not have been modified and the defendant's claim that it should have been reduced even more. Pain and suffering damages are compensable even if the injured person was not conscious for an extended period of time.

> We have stated damages for pain and suffering of a decedent may not be recovered "if death or unconsciousness is instantaneous," but "if substantial evidence shows the decedent did suffer pain the item is submissible although the period of consciousness was not protracted."

*Lang v. City of Des Moines*, 294 N.W.2d 557, 562 (Iowa 1980) (quoting *Schlichte v. Franklin Troy Trucks*, 265 N.W.2d 725, 727 (Iowa 1978)). Two doctors testified Brad suffered severe pain during the time he was conscious. His injuries included abrasions on his head and neck, fractured ribs, bruised and hemorrhaged lungs, nearly complete amputation of his right pelvis and leg, and bruising and hemorrhaging of his kidneys.

Mercifully, however, Brad was spared the pain from these injuries for an extended time. The district court was in the best position to evaluate this factor, with all of the other evidence, and its order for remittitur was within its discretion. *See Lee v. Giangreco*, 490 N.W.2d 814, 820 (Iowa 1992) ("We are confident that the district court, having heard firsthand the witnesses ... was in the best position to assess the credibility of [the plaintiff's] claims and her resultant injury."). We conclude the amount of damages established by the court's posttrial order was appropriate. Accordingly, the plaintiffs shall accept the judgment as remitted by the district court's order within ten days of the issuance of the procedendo or the case shall be set for a new trial.

## IV. *The Instruction on Sole Proximate Cause.*

■ Both parties challenge the court's sole-proximate-cause instructions. The plaintiffs argue the jury should not have been allowed to consider the sole-proximate-cause issue at all because that defense is incompatible with comparative fault. The defendant contends the court properly allowed the jury to consider sole proximate cause but argues the instructions failed to explain his theory adequately, and the court should have admitted expert testimony on the issue.

■ Sole proximate cause means the only proximate cause. *Johnson v. Interstate Power Co.*, 481 N.W.2d 310, 323 (Iowa 1992). The rationale of the defense is that an independent event or third party, whether or not joined in the action, is the sole cause of the plaintiff's injuries. The defendant bears the burden of proof on the issue. The defense is incompatible with the doctrine of comparative fault because, under sole proximate cause, the defendant is insulated from liability. *Baker v. City of Ottumwa*, 560 N.W.2d 578, 583 (Iowa 1997). The answer to the plaintiffs' complaint that the sole-proximate-cause instruction should not have been given is that the jury obviously rejected the defense by assessing fault against both the plaintiff and the defendant.

We also reject the defendant's argument that the DOT's violations of OSHA regulations would, if he had been permitted to develop his sole-proximate-cause defense, have established the defense as a matter of law. We have held that the OSHA standards are adopted for the protection of employees and should not be applied to defeat an employee's claim against a third party. *See Leaf v. Goodyear Tire & Rubber Co.*, 590 N.W.2d 525, 537 (Iowa 1999) (noting OSHA standards were designed to protect employees, not to establish an em-

ployee's negligence per se in an action by the employee against the third party).

The most obvious answer to the defendant's complaint that he was not given sufficient latitude to develop his theory of sole proximate cause is that the instruction should not have been given at all; there was substantial evidence, including the defendant's own admission, that the defendant was negligent. The defense of sole proximate cause is properly given *only* when a reasonable fact finder could conclude that a cause other than a defendant's negligence was the sole cause of the damage. *See Johnson*, 481 N.W.2d at 323 ("Sole proximate cause means the only proximate cause.").

We reject both parties' assignments of error relating to sole proximate cause. The defendant was not entitled to the submission of this defense because it is incompatible with comparative fault. However, the plaintiffs were not prejudiced because the jury rejected the theory anyway.

### V. *Submission of the Decedent's Fault.*

The jury was permitted to consider the fault of Brad Kuta, the deceased, in determining comparative fault under Iowa Code chapter 668 (1995). The plaintiffs claim this was error.

Iowa Code section 668.3(2) provides in relevant part:

In the trial of a claim involving the fault of more than one party to the claim . . . the court, unless otherwise agreed by all parties, shall instruct the jury to answer special interrogatories . . . indicating all of the following:

. . . .

(b) The percentage of the total fault allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under section 668.7 . . . .

The plaintiffs contend the court erred in two respects: Plaintiffs' first contention is that the court should not have allowed Brad's negligence to be weighed at all because he was a construction worker and therefore was subject to a reduced standard of care. A highway construction worker is not charged with the same degree of care as an ordinary pedestrian and is not required to keep a constant lookout or to yield the right-of-way. Nevertheless, he must exercise the "reasonable care and observation for his safety" as the circumstances require. *Hartwig v. Olson*, 261 Iowa 1265, 1276, 158 N.W.2d 81, 88 (1968). This principle does not, of course, totally relieve a highway worker from exercising care for his own safety. We believe the trial court correctly conveyed this principle in this instruction:

A worker on the highway is required to use ordinary care. A worker on the highway is not charged with the same degree of care as an ordinary pedestrian. Bradley Kuta was required to exercise only such reasonable care and observation for his safety as under the circumstances were called for. The conduct of Bradley Kuta's employer is not chargeable to him.

The Kutas also argue the trial court erred by admitting evidence on the issue of whether Brad was a pedestrian and whether he complied with a pedestrian's duty of care. They argue that the error was apparent in Instruction No. 22, which stated:

Any pedestrian crossing a road at a point other than a crosswalk shall yield the right of way to all vehicles on the road.
A violation of this law is negligence.

Any confusion in the court's instructions was cured in the same instruction, however, which further provided:

However, the driver of a vehicle is required to exercise ordinary care to avoid hitting a pedestrian on a road and shall give warning by sounding the horn

when necessary. The driver of a vehicle shall yield the right of way to pedestrian workers doing maintenance or construction work on a highway whenever the driver is notified of the presence of such workers by a flagman or a warning sign.

A violation of this law is negligence.

While the first paragraph of Instruction 22 referred to the duty of care of a pedestrian in general and thus was inapposite in the case of a highway worker, the instructions, when considered as a whole, make it clear that workers on a highway are not charged with the same degree of care as an ordinary pedestrian. *See Leaf,* 590 N.W.2d at 536 (instructions to be read as a whole).

## VI. *The Consortium Issue.*

The plaintiffs' suit included a claim for loss of consortium of their son, an adult. The court entered summary judgment for the defendant on that claim. The plaintiffs claimed that Iowa Rule of Civil Procedure 8 (which allows consortium damages for the death of a minor child but not an adult child) and Iowa Code section 613.15 (which allows suits for loss of consortium of parents, but not for the loss of children) violate equal protection as guaranteed by the federal and Iowa constitutions. *See* U.S. Const. amend. XIV, § 1; Iowa Const. art. I, § 6.

■■■ A. *Rule 8.* The plaintiffs' equal protection challenge to rule 8 was rejected by us in *Ruden v. Parker,* 462 N.W.2d 674, 676 (Iowa 1990), but the plaintiffs ask us to reconsider that holding. They cite cases from other jurisdictions (most of which have different statutory provisions) and a law review article criticizing *Ruden* on the basis that denial of consortium damages for an adult child is based on the outdated notion that a parent suffers a financial loss on the death of a minor but not on the death of an adult child. *See* Timothy D. Ament, *Parents' Loss of Consortium Claims for Adult Children in Iowa: The Magical Age of Eighteen,* 41 Drake L.Rev. 247, 257 (1992) [hereinafter Ament].

The plaintiffs rely on public policy to support their argument that rule 8 should be interpreted to cover adult children. They note the Iowa Legislature passed an amendment to rule 8 and Iowa Code section 613.15 to allow damages for the death of an adult child. The bill, however, was vetoed by the governor. Ament, at 257 (H.F. 335, 74th G.A. ___ § 1 (Iowa 1991)). While public policy might well support a different rule with respect to consortium of an adult child, the statute remains as it was at the time we decided *Ruden.* We said in that case:

> Minor children, as a general rule, live with their parents, and during their early years the interaction between the parent and child is of great importance to the parents, the child and society as a whole. In light of the importance of this relationship, it is rational that the legislature would choose to protect it by allowing recovery when the minor child is killed or injured.
>
> Once emancipation or majority is attained, the relationship is different. The fact that there may be a continuing relationship between the parent and the adult child does nothing to diminish the fact that the relationship does change as the child becomes emancipated or reaches the age of majority.
>
> Since there is a difference in the degree and nature of the relationship, with that of the parent/adult child being somewhat less than that of the parent/minor child, the legislature can rationally treat these relationships in a different manner, and limit the recoverability of consortium damages to the situation where the child dies before reaching the age of majority or emancipation.

*Ruden,* 462 N.W.2d at 676.

We reject the plaintiffs' invitation to overrule *Ruden,* which controls.

■■■ B. *Iowa Code section 613.15.* The plaintiffs contend Iowa Code section 613.15 (which provides for consortium

damages on the death of a parent) also denies them equal protection because it does not provide a reciprocal right for the parents to recover for the loss of a child. Section 613.15 in relevant part provides:

[I]n the case of both women and men, [an injured] person, or the appropriate administrator, may recover the value of services and support as *spouse or parent,* or both, as the case may be, in such sum as the jury deems proper; provided, however, recovery for these elements of damage may not be had by the spouse and children, as such, of any person who, or whose administrator, is entitled to recover same.

(Emphasis added.)

The plaintiffs emphasize the incalculable value of their son's life, and the evidence is undisputed that Brad Kuta was an outstanding young man. The plaintiffs point out that section 613.15 allows consortium damages for a child on the loss of a parent, regardless of the child's age, and the value to parents of an adult son should receive similar recognition.

 Equal protection requires that those who are similarly situated be treated similarly. *Norland v. Grinnell Mut. Reins. Co.,* 578 N.W.2d 239, 241 (Iowa), *cert. denied,* —— U.S. ——, 119 S.Ct. 342, 142 L.Ed.2d 282 (1998). Because the plaintiffs do not claim the distinctions under the statute constitute suspect classifications or fundamental rights, we apply a rational-basis analysis, that is, a classification must not be patently arbitrary and must bear a rational relationship to a legitimate governmental interest. *Id.* We presume statutes are constitutional and a challenger must negate every reasonable basis for the classification. *Id.* at 241–42.

It is true, as the plaintiffs argue, the legislature attempted to amend section 613.15 as well as rule 8. The attempt, however, was unsuccessful. We cannot, under the guise of interpretation, amend the statute to provide a cause of action presently not covered by the statute. Any argument for the expansion of the statute to include the right to sue for consortium on the loss of a child must be addressed to the legislature–not this court.

## VII. *The Punitive–Damages Issue.*

 The plaintiffs contend it was error for the court to direct a verdict against them on their claim for punitive damages. The test for punitive damages is

[w]hether, by a preponderance of clear, convincing, and satisfactory evidence, the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another.

Iowa Code § 668A.1(1)(a). Willful and wanton means

"the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences."

*Fell v. Kewanee Farm Equip. Co.,* 457 N.W.2d 911, 919 (Iowa 1990) (quoting W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 34, at 213 (5th ed.1984)); *see also Midwest Home Distrib., Inc. v. Domco Indus. Ltd.,* 585 N.W.2d 735, 743 (Iowa 1998). Under the Restatement,

[t]he actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

*Restatement (Second) of Torts* § 500, at 587 (1965).

 To establish willful and wanton conduct, the plaintiffs here point to evi-

dence that the weather conditions were not adverse; there was no rain, fog or other obstruction to Newberg's vision; two signs, four foot by four foot in size, warned of a "survey crew," and a rotating beacon and flashers were operating on an orange pickup parked at the scene. Brad was wearing a florescent vest. Despite these warnings, the first time Newberg knew that his vehicle had hit something was when he heard a noise. Witnesses apparently saw a state trooper take a liquor bottle from the Newberg vehicle and place it in the trunk of his patrol car. The Kutas attempted to introduce evidence of the defendant's prior accidents. The court refused to admit the evidence, so the plaintiffs made this offer of proof in support of their case for punitive damages: A year prior to the incident Newberg ran into the rear of a truck that had stopped at a construction site during daylight hours. Also, a year and a half before this accident, Newberg drove up to a mailbox and stepped out of his car, allowing it to roll backwards into another car. The plaintiffs contend that this evidence showed that Newberg was not fit to drive a motor vehicle.

On the other hand, witnesses testified that they had passed through the site just prior to the accident and had trouble seeing the warning signs and the people working on the highway. In addition, the defendant's view was partially blocked by a van ahead of him. The defendant's accident reconstruction expert testified Newberg was traveling approximately forty-two miles per hour in a fifty-five-mile speed zone. Moreover, the plaintiffs did not show the defendant was drunk or even that he had been drinking.

We conclude the record, even considered in the light most favorable to the plaintiffs, does not meet the test for punitive damages. *See Fell,* 457 N.W.2d at 919 (intentional act in disregard of a known or obvious risk so great as to make it highly probable that harm would follow).

## VIII. *The Evidence Rulings.*

Both parties complain about evidence rulings by the court.

A. *The prior accidents.* The plaintiffs complain that the court abused its discretion in refusing to admit evidence of the defendant's prior accidents. Evidence of prior accidents

> is not relevant to the issue of causation of the occurrence in question in the absence of proof of substantial similarity of all conditions that might enter into or affect causation.

*Meeker v. City of Clinton,* 259 N.W.2d 822, 832 (Iowa 1977).

The proffered testimony fails to meet the test of substantial similarity, and the trial court did not abuse its discretion in denying its admission.

B. *Testimony of other drivers.* The plaintiffs complain that the trial court should not have admitted the testimony of other drivers who also had trouble seeing workers on the highway and the warning signs. This testimony, however, was relevant to show the conditions at the scene, and it was properly admitted.

C. *The videotape.* The plaintiffs attempted to show a videotape of a friend's tributes to the deceased, but the court refused, presumably weighing the probative value of the evidence and its possible prejudicial effect. *See* Iowa R. Evid. 403. Moreover, the videotape was largely cumulative of other evidence regarding the attributes of the victim. We find no abuse of discretion in this ruling.

D. *Photograph of victim's injuries.* The defendant argues the court should not have admitted the photographs of the victim's gruesome injuries, claiming they were highly prejudicial. Further, according to the defendant, their only asserted purpose was to show the victim was wearing a florescent vest–a matter the defendant did not contest. The plaintiffs argue the photographs were relevant to show the

extent of the victim's injuries and the resulting pain and suffering, and we agree.

■ E. *Economists' reports.* The court refused to allow written reports by either of the parties' economic experts to go to the jury room because the reports had not been received in evidence. *See* Iowa R. Civ. P. 198 (jurors may take "all exhibits in evidence except as otherwise ordered"). The reports were merely cumulative of the witnesses' testimony, and the court did not abuse its discretion in refusing to allow them to go to the jury room.

■ F. *The evidence of workers' compensation subrogation.* The plaintiffs claim error in the court's refusal to instruct the jury that Brad's employer, the DOT, was entitled to be indemnified for workers' compensation benefits made on behalf of Brad. *See* Iowa Code § 85.22. Brad had no dependents, so workers' compensation benefits were limited to medical expenses and up to $5000 for burial expenses. *See* Iowa Code §§ 85.27, 85.28. The plaintiffs, however, believe that

> [t]he jurors, knowing that Brad died in the course of his employment, may have assumed that his estate was entitled to workers' compensation benefits and that may have been the reason that they did not allow damages in an amount equal to even the lowest figure provided by expert witnesses of Defendant.

The plaintiffs also believe the jurors should have been told that Brad's family received no workers' compensation from his employer "and that any money which Brad's employer paid would be paid back." They base this argument on Iowa Code section 668.14, which provides in part:

> **Evidence of previous payment or future right of payment.**
>
> 1. In an action brought pursuant to this chapter seeking damages for personal injury, the court shall permit evidence and argument as to the previous payment or future right of payment of actual economic losses incurred or to be incurred as a result of the personal injury or necessary medical care, rehabilitation services, and custodial care except to the extent that the previous payment or future right of payment is pursuant to a state or federal program or from assets of the claimant or the members of the claimant's immediate family.

■ We have noted that section 668.14 was enacted to prevent a claimant from recovering twice for the same injury. *Schonberger v. Roberts,* 456 N.W.2d 201, 202 (Iowa 1990). In a workers' compensation case, double recovery is prevented by statute, Iowa Code § 85.22, which provides for subrogation.

We have held that a fact finder in a case involving workers' compensation subrogation need not be informed of the receipt of workers' compensation benefits because

> to any extent the jury does reduce the damage award because of the benefits, [the worker] is in effect paying, not once, but twice. We are convinced the legislature did not intend to call for this double reduction.

*Schonberger,* 456 N.W.2d at 203.

The plaintiffs argue that the jury might have assumed the plaintiffs had received substantial workers' compensation benefits and therefore might have reduced the verdict accordingly, when in fact only medical and funeral expenses had been received.

It is interesting that the plaintiffs, rather than the defendant, object to the court's refusal to allow evidence of collateral payments. We would ordinarily expect a defendant to press for admission of such evidence. *See id.* ("The only conceivable purpose of informing the jury of those benefits is to invite the jury to reduce [the plaintiff's] recovery because of them."). Here, the plaintiffs' purpose in introducing evidence of collateral benefits is not to show what Brad's family actually received but what it did not. Neither the statute nor our cases, however, suggests that this is a proper application of section 668.14.

If a workers' compensation recipient has complied with the subrogation of the statute, this satisfies section 668.14. *Schonberger*, 456 N.W.2d at 203. That is the case here, and we therefore reject the plaintiffs' collateral-source argument.

We have examined all the issues raised on the appeal and cross-appeal and find no reversible error. We therefore affirm. The plaintiffs shall accept the judgment as remitted within ten days of the issuance of procedendo or the case shall be set for a new trial.

**AFFIRMED ON BOTH APPEALS.**