Richard Lynn SCHMITT,
Plaintiff–Appellee,

v.

KOEHRING CRANES, INC., d/b/a Te-
rex Cranes–Waverly Operations,
Defendant–Appellant.

No. 10–0618.

Court of Appeals of Iowa.

Feb. 23, 2011.

David J. Dutton and Erin Patrick Lyons of Dutton, Braun, Staack & Hellman, P.L.C., Waterloo, for appellant.

Gregory T. Racette of Hopkins & Huebner, P.C., Des Moines, for appellee.

Heard by VOGEL, P.J., and DOYLE and TABOR, JJ.

VOGEL, P.J.

Koehring Cranes, Inc. appeals following a jury verdict in favor of Richard Schmitt. On appeal, Koehring Cranes asserts that the district court erred in (1) denying its motion for a directed verdict; (2) not instructing the jury on sole proximate cause; and (3) admitting a learned treatise without proper foundation. First, we find that because there was a fact question regarding the design defect issues, the district court did not err in denying Koehring Cranes' motion for a directed verdict and submitting the case to the jury. Next, we find that because Koehring Cranes only asserted that Schmitt was the cause of his own injuries and did not introduce a third party or event as a cause, there was no evidence to support a sole proximate cause instruction and the district court did not err in denying Koehring Cranes' request. Finally, the district court did not err in admitting portions of an engineering handbook. We affirm.

I. **Background Facts & Proceedings.**

Schmitt was a longtime iron worker, beginning his career in 1965. In 2006, Schmitt and Devere Lindquist co-owned AB Construction, which installed machinery and provided ironwork services for different companies. AB Construction had purchased a Terex TB42 boom lift in 2002 from Koehring Cranes, the designer, manufacturer, and distributor of the boom lift. The boom lift was designed to allow a worker to use a platform or basket to do ironwork at different heights.

On December 28, 2006, Schmitt was injured while operating the boom lift. Schmitt was lengthening rails on an overhead bridge crane system. He positioned the basket of the boom lift below the crane rail, with the guardrail of the basket directly under the crane rail approximately four to five inches. When Schmitt reached over the guard rail to operate the boom lift controls, the welding glove he was wearing moved the control forward and caused the boom lift basket to move upward. His left arm was caught between the boom lift's guard rail and a steel overhead beam, causing a crushing injury. Lindquist operated the controls at the base of the boom lift to lower the basket and free Schmitt.

On October 17, 2008, Schmitt filed a design defect products liability suit against

Koehring Cranes.[1] Trial was held February 16 to 24, 2010. Both Schmitt and Koehring Cranes presented expert testimony regarding whether there was a design defect. Schmitt presented the testimony of a mechanical engineer, Dr. Jerry Hall. Dr. Hall explained that a "pinch point" is a space between two solid objects, with one object movable relative to the other, and where someone would need to put their hand or arm into so that they could accomplish some task. He stated that the boom lift had a pinch point—the space between the guard rail and an overhead object where the operator would have to put his arm so that he could reach the controls—and the design of the control panel and the platform that created this pinch point was a defective design. Dr. Hall also explained that a reasonable alternative design would be one that protected the controls and operator, could be accomplished in a few ways, and was economically feasible.

At the close of the evidence, Koehring Cranes moved for a directed verdict asserting because the pinch point was "external"—created by the operator between the boom lift and another object—and an operator could avoid the "external" pinch point by reaching under the guard rail in order to reach the controls, the placement of the guardrail was not a defective design. The district court denied its motion.

The jury returned its verdict finding that (1) the TB42 boom lift was defective in design at the time Koehring Cranes sold it to Schmitt; (2) the fault of Koehring Cranes was a proximate cause of damage to Schmitt; and (3) the TB42 boom lift did not conform to the state-of-the-art design at the time it was designed, manufactured, and sold. Additionally, the jury found

Schmitt was also at fault at the time of the accident and Schmitt's fault was a proximate cause of his damages. The jury found Schmitt was forty percent at fault and Koehring Cranes was sixty percent at fault. The jury awarded damages in the amount of $800,608. The district court entered judgment in favor of Schmitt and against Koehring Cranes in the amount of $480,364.80, which reflected the percentage of fault assessed. Koehring Cranes moved for judgment notwithstanding the verdict and a new trial, and the district court denied both motions on April 5, 2010.

Koehring Cranes appeals and challenges the district court's denial of its motion for a directed verdict, the jury instructions, and certain expert testimony.

## II. Directed Verdict.

Our review of a trial court's ruling on a motion for directed verdict is for correction of errors at law. *Deboom v. Raining Rose, Inc.*, 772 N.W.2d 1, 5 (Iowa 2009).

In doing so we view the evidence in the light most favorable to the nonmoving party and take into consideration all reasonable inferences that could be fairly made by the jury. If substantial evidence in the record supports each element of a claim, the motion for directed verdict must be overruled. When reasonable minds would accept the evidence as adequate to reach the same findings, evidence is substantial. On appeal our role is to determine whether the trial court correctly determined there was sufficient evidence to submit the issue to the jury.

---

1. The petition named Koehring Cranes, Inc., Terex Corporation, and Terexlift, S.r.l. as defendants, but Schmitt filed a dismissal with prejudice of the claims against Terex Corporation and Terexlift, S.r.l. on February 23, 2009.

*Easton v. Howard,* 751 N.W.2d 1, 5 (Iowa 2008).

The jury was instructed,

In order to recover on a claim that the TB42 boom lift involved in this case was defective in design, Mr. Schmitt must prove all the following propositions:

1. [Koehring Cranes] sold and distributed the TB42 boom lift involved in this case.

2. [Koehring Cranes] was engaged in the business of selling or distributing the TB42 boom lifts;

3. The TB42 boom lift involved in this case was in a defective condition at the time it left the control of [Koehring Cranes], in that it was not designed to guard against a known pinch point along a portion of the platform guardrail which was in front of the control panel.

4. A reasonable alternative safer design could have been practically adopted at the time of sale or distribution.

5. The alternative design would have reduced or avoided the foreseeable risks of harm posed by the TB42 boom lift involved in this case;

6. The omission of the alternative design renders the TB42 boom lift involved in this case not reasonably safe;

7. The alternative design would have reduced or prevented the harm to Mr. Schmitt;

8. The design defect was a proximate cause of damage to Mr. Schmitt; and

9. The amount of damage.

If Mr. Schmitt has failed to prove any of these propositions, he is not entitled to damages. If Mr. Schmitt has proved all of these propositions, then you will consider the state of the art defense as explained in Instruction No. 17.

■ Koehring Cranes asserts that a verdict should have been directed in its favor regarding all of the design defect issues. Koehring Cranes argues that because the pinch point was "external"—created by the operator between the boom lift and another object—and an operator could avoid it by reaching under the guard rail in order to reach the controls, the placement of the guardrail was not a design defect. Additionally, Koehring Cranes argues that even though Schmitt's expert testified that there was a safer design that would have prevented the accident, this was not accurate and the design suggested by the expert would not make the boom lift safer. Schmitt presented expert testimony from Dr. Hall on each element regarding design defect, which Koehring Cranes disputed. A directed verdict is only to be granted when "there is no substantial evidence to support the plaintiffs claim." *Deboom,* 772 N.W.2d at 5. The disputed questions were fact questions for the jury to determine. *See id.* Koehring Cranes is essentially attempting to argue the evidence again, and we find the district court did not err in denying its motion for a directed verdict.

### III. Jury Instructions.

■ "We review challenges to jury instructions for correction of errors at law. We review the related claim that the trial court should have given the defendant's requested instructions for an abuse of discretion." *State v. Marin,* 788 N.W.2d 833, 836 (Iowa 2010).[2] Error in refusing to

---

**2.** When reviewing a claim that the trial court should have given a party's requested instruction, previous cases have reviewed for both correction of errors at law and abuse of discretion. *Compare Koenig v. Koenig,* 766 N.W.2d 635, 637 (Iowa 2009) (reviewing a claim the district court should have instructed on the plaintiff's proposed instruction for errors at law), *and Pexa v. Auto Owners Ins. Co.,* 686 N.W.2d 150, 160 (Iowa 2004) ("[W]e

496

give a jury instruction "does not warrant reversal unless it results in prejudice to the complaining party." *Koenig v. Koenig*, 766 N.W.2d 635, 637 (Iowa 2009). The court is required to give a jury instruction requested by a party if the proposed instruction states a correct rule of law, applies to the facts of the case, and is not embodied in other instructions. *Gamerdinger v. Schaefer*, 603 N.W.2d 590, 595 (Iowa 1999).

## A. Proximate Cause.

■ Koehring Cranes next asserts the district court erred in refusing to give the jury an instruction it requested on sole proximate cause. Schmitt responds that this issue is not preserved for appeal because although Koehring Cranes raised an objection during trial proceedings, it did not raise the issue in its motion for judgment notwithstanding the verdict or its motion for new trial. To preserve error for appellate review, a party must alert the district court to the issue at a time when the district court can take corrective action. *Summy v. City of Des Moines*, 708 N.W.2d 333, 338 (Iowa 2006); *see also LaCoste v. Ford Motor Co.*, 322 N.W.2d 898, 900 (Iowa Ct.App.1982) ("In order to preserve error for trial court's failure to adequately instruct the jury it is only necessary to apprise the court of the basis of the complaint with sufficient specificity to permit correction of the error before the case goes to the jury."). From our examination of the record we determine Koehring Cranes requested the jury instruction, the district court considered the matter

and denied Koehring Cranes' request, and Koehring Cranes objected. *See* Iowa R. Civ. P. 1.924 (providing that an objection must be made before the jury is instructed). Accordingly, we find this issue was preserved for appeal.

■ Koehring Cranes argues that because Schmitt chose to reach over the guard rail instead of reaching under it to operate the control panel, he alone caused his injuries and therefore, the district court should have instructed the jury regarding the sole proximate cause defense. "Sole proximate cause means the *only* proximate cause." *Summy*, 708 N.W.2d at 342. The defense provides that "[a]ny event not chargeable to the defendant that constitutes the sole proximate cause of the injury will ... insulate the defendant from liability." *Sponsler v. Clarke Elec. Coop., Inc.*, 329 N.W.2d 663, 665 (Iowa 1983). Sole proximate cause is not a defense to comparative fault. *Kuta v. Newberg*, 600 N.W.2d 280, 285 (Iowa 1999) (explaining that a sole proximate cause defense is incompatible with the doctrine of comparative fault); *Johnson v. Interstate Power Co.*, 481 N.W.2d 310, 323–24 (Iowa 1992) ("Sole proximate cause is not a comparative fault defense because proof of sole proximate cause insulates a defendant from liability. In these circumstances, the fault of a defendant cannot be a proximate cause of a plaintiff's injuries."). Rather, "[i]t rests on the notion that some third party or other independent event was the sole cause of the plaintiffs injuries." *Summy*, 708 N.W.2d at 342. Consequently, "[t]he defendant who asserts the defense

review a challenge to the district court's refusal to submit a jury instruction for correction of errors of law."), *with Summy v. City of Des Moines*, 708 N.W.2d 333, 340 (Iowa 2006) ("We review the related claim that the trial court should have given the defendant's requested instructions for an abuse of discretion."), *and Anderson v. State*, 692 N.W.2d

360, 363 (Iowa 2005) ("We review a court's refusal to give [a plaintiff's requested] instruction for an abuse of discretion."). Most recently, our supreme court reviewed this claim for abuse of discretion and therefore, we do so in the present case. *See Marin*, 788 N.W.2d at 836.

bears the burden of proving it." *Baker v. City of Ottumwa,* 560 N.W.2d 578, 583 (Iowa 1997).

■■■■■ A sole proximate cause defense generally introduces a third party's conduct or a separate event into the case and claims that it—and not the defendant—was sole proximate cause of the accident. *Sponsler,* 329 N.W.2d at 665. Koehring Cranes did not introduce a third party's conduct or other causal event into the case, but only argued that Schmitt was the sole proximate cause of the accident. *See id.* ("This is also why cases in which the [sole proximate cause] defense is based on the plaintiffs conduct are distinguishable."). This argument was fully subsumed in the comparative fault instruction. *Cf. id.* (explaining that when a third party or other event is introduced, the sole proximate cause "defense does not totally inhere in the plaintiffs burden to prove proximate cause"). That is to say, had the jury been instructed on sole proximate cause,[3] the jury's first question would have been whether Schmitt was one hundred percent at fault. If they found Schmitt less than one hundred percent at fault, then according to the comparative fault instruction[4] the jury would have again considered what percent Schmitt was at fault. Here, the jury found Schmitt was forty percent and Koehring Cranes was sixty percent at fault. *Cf. Kuta,* 600 N.W.2d at 286 (explaining that although the jury should not have been instructed as to sole proximate cause, the jury rejected the defense by assessing fault against both the plaintiff and the defendant). A sole proximate cause jury instruction was not applicable under the present circumstances. *See id.*

3. The uniform jury instruction on sole proximate cause is,

The defendant claims the sole proximate cause of the plaintiff's damages was [an act of God] [the conduct of another party] [a condition not under the control of any party]. Sole proximate cause means the only proximate cause. The defendant must prove both of the following propositions:

1. The [Act of God] [conduct of another person] [condition not under the control of any party] occurred.

2. The [Act of God] [conduct of another person] [condition not under the control of any party] was the only proximate cause of plaintiff's damage.

If the defendant has failed to prove either of these propositions, the defendant has failed to prove the defense of sole proximate cause. If the defendant has proved both of these propositions, the defendant has proved the defense of sole proximate cause and you must find the fault of the defendant, if any, was not a proximate cause of plaintiff's damages when you answer the special verdicts.

4. The jury was instructed,

Instruction No. 18

[Koehring Cranes] claims Mr. Schmitt was at fault at the time of the accident. To establish the defense of comparative fault, [Koehring Cranes] must prove both of the following propositions:

1. Mr. Schmitt was at fault. In order to prove fault, [Koehring Cranes] must prove Mr. Schmitt was negligent in his operation of the TB42 boom lift involved in this case at the time of the accident.

2. The fault of Mr. Schmitt was a proximate cause of his damages.

If [Koehring Cranes] has failed to prove either of these propositions, then [Koehring Cranes] has not proved its defense of comparative fault. If [Koehring Cranes] has proved both of these propositions, then you will assign a percentage of fault against Mr. Schmitt and include the fault of Mr. Schmitt in the total percentage of fault found by you in answering the special verdicts.

. . . .

Instruction No. 23

After you have compared the conduct of the parties, if you find Mr. Schmitt was at fault and that his fault was more than 50% of the total fault, then Mr. Schmitt cannot recover damages.

However, if you find the fault of Mr. Schmitt was 50% or less of the total fault, then I will reduce the total damages by the percentage of fault.

at 285–86 (explaining that where the defendant asserted the plaintiff was the sole proximate cause, the defendant was not entitled to submission of the defense). Therefore, the district court did not err in denying Koehring Cranes' request that the jury be instructed as to the defense. *See Sponsler,* 329 N.W.2d at 665 ("[A] defendant is entitled to have the jury instructed on [the sole proximate cause defense] when substantial evidence supports it.").

## B. Comparative Fault.

■ Koehring Cranes next asserts that the district court should have given a comparative fault instruction that contained specifications of Schmitt's fault. Schmitt responds that Koehring did not object to the comparative fault instruction given and consequently, did not preserve this issue for appeal.

Prior to the close of evidence, Koehring Cranes proposed a comparative fault instruction that contained specifications of Schmitt's fault. However, this is insufficient to preserve the issue for appeal. Iowa Rule of Civil Procedure 1.924 provides,

> The court shall instruct the jury as to the law applicable to all material issues in the case and such instructions shall be in writing, in consecutively numbered paragraphs, and shall be read to the jury without comment or explanation; provided, however, that in any action where the parties so agree, the instructions may be oral. At the close of the evidence, or such prior time as the court may reasonably fix, any party may file written requests that the jury be instructed as set forth in such requests. Before argument to the jury begins, the court shall furnish counsel with a preliminary draft of instructions which it expects to give on all controversial issues, which shall not be part of the record. Before jury arguments, the court shall give to each counsel a copy of its instructions in their final form, noting this fact of record and granting reasonable time for counsel to make objections, which shall be made and ruled on before arguments to the jury. *Within such time, all objections to giving or failing to give any instruction must be made in writing or dictated into the record, out of the jury's presence, specifying the matter objected to and on what grounds. No other grounds or objections shall be asserted thereafter, or considered on appeal.* But if the court thereafter revises or adds to the instructions, similar specific objection to the revision or addition may be made in the motion for new trial, and if not so made shall be deemed waived. All instructions and objections, except as above provided, shall be part of the record. Nothing in the rules in this chapter shall prohibit the court from reading to the jury one or more of the final instructions at any stage of the trial, provided that counsel for all parties has been given an opportunity to review the instructions being read and to make objections as provided in this rule. Any instructions read prior to conclusion of the evidence shall also be included in the instructions read to the jury following conclusion of the evidence.

(Emphasis added.)

At the close of evidence, the district court provided the parties with the court's proposed jury instructions and then a final set of jury instructions. There was a discussion as to the fault definition instruction, which stated, "In these instructions I will be using the term 'fault.' Fault means one or more acts or omissions towards the person or the property of the actor or of another which constitutes negligence." The proposed fault definition instruction also included an additional statement ref-

erencing the defendant's fault. Koehring Cranes objected to the additional statement and stated,

> In Instruction [number 19] we believe that the instruction is incorrect in that it places a particular emphasis and is a comment on the evidence in the last sentence where it says fault also includes the act of a defendant who sells and distributes a product that is defective in design. In so doing it fails to say that fault is and does include carelessness by the operator and failure of the operator to use the available safety devices to avoid his own injury and if you were going to say in what way the fault relates specifically in the evidence to the Defendant, it ought to also make specific reference to the manner in which the Plaintiff is claimed to have been at fault in this incident. And—And we believe that instruction as written is a comment on the evidence and, therefore, is improper.
>
> . . . .
>
> We would also ask that the Court give the proposed instructions that we have e-mailed to the Court this morning. They are uniform instruction 400.8 [Unreasonable Failure to Avoid an Injury—Defined], uniform instruction 400.9 [Unreasonable Assumption of the Risk—Defined], and 700.5 [Sole Proximate Cause].
>
> ... As I've given to Plaintiffs counsel copies of those instructions, I will similarly provide those to the Court.

Schmitt agreed to removing the last sentence of instruction number 19, and the court stated, "If the parties are in agreement that [sentence] is inappropriate, the Court will remove that." Neither party objected.

In its brief, Koehring Cranes argues that it preserved the issue of giving a comparative fault instruction that con-

tained specifications of Schmitt's fault, but cites to the above discussion regarding instruction number 19. The above discussion does not request the comparative fault instruction include the specifications of Schmitt's fault, and regards the fault definition and not the comparative fault instruction—this does not preserve Koehring Cranes' current argument.

Koehring Cranes raised the issue in its motion for a new trial. This, however, is insufficient to preserve the issue for appeal. *See* Iowa R. Civ. P. 1.924 ("*But if the court thereafter revises or adds to the instructions,* similar specific objection to the revision or addition may be made in the motion for new trial, and if not so made shall be deemed waived." (emphasis added)). The district court ruled,

> Defendant argues that the Court committed an error of law by submitting a jury instruction on comparative fault that did not include specific instances of the fault of Plaintiff as requested. It is too late now for Defendant to raise this ground as a basis for a new trial. While Defendant may have set out specific instances of fault on the part of Plaintiff in its proposed jury instruction, neither the draft instruction nor the final instruction prepared by the Court included any specific instances of fault and Defendant failed to take exception or otherwise object to the instructions of the Court on the grounds it now raises. The failure of the Defendant to take exception to the comparative fault instruction at trial precludes it now from asserting an alleged deficiency in this instruction as grounds for a new trial. Iowa R. Civ. P. 1.924; *see Moser v. Stallings,* 387 N.W.2d 599, 604 ([Iowa] 1986).

 To preserve error for appellate review, a party must alert the district court to the issue at a time when the district court can take corrective action.

*Summy,* 708 N.W.2d at 338. As rule 1.924 sets forth, that time is when the district court provides the parties with proposed and final jury instructions. No objection was made at that time, and was not made until after the verdict was rendered. This was too late. We cannot find an objection in the record that would preserve this argument for appeal.

## IV. Evidentiary Ruling—Learned Treatise.

▮ Finally, Koehring Cranes asserts the district court erred in admitting portions of an engineering handbook. "We give the trial court broad discretion in evidentiary matters, disturbing its rulings only upon a showing of abuse." *State v. Howard,* 509 N.W.2d 764, 768 (Iowa 1993). We review hearsay claims for errors at law. *State v. Musser,* 721 N.W.2d 734, 751 (Iowa 2006).

Iowa Rule of Evidence 5.803(18) provides the following is not excluded by the hearsay rule,

> Learned treatises. To the extent called to the attention of an expert witness upon cross-examination or relied upon by that witness in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits.

During trial, Schmitt's expert, Dr. Hall, read excerpts from R. Matthew Seiden, PE, CSP, CPSM, *Product Safety Engineering for Managers: A Practical Handbook and Guide* (1984).

On appeal, Koehring Cranes argues that the district court erred in allowing Dr. Hall to read from the treatise pursuant to rule 5.803(18) because there was not sufficient foundation for the admission of the book as a learned treatise. Schmitt responds that this is not the same objection he made prior to the admission of the text and did not raise this specific objection until after the text was read, but regardless there was sufficient foundation for the text to be qualified as a learned treatise.

Dr. Hall testified the text was a learned treatise that set forth standard engineering principles; the book was written by R. Matthew Seiden, a professional engineer, who had an engineering degree, was a certified safety professional and certified product safety manager, and was currently a consultant; the publisher of the book was Prentice Hall and the general practice before publication is that the book would be peer reviewed and described the material as "well accepted." Koehring Cranes objected stating,

> I would object to this text as a *lack of foundation as to where this text comes from.* We've heard that it is someone named Mr. Seiden and what the initials are perhaps after him but that's all. Otherwise we don't know where this book came from.

The district court overruled the objection and Hall read the excerpts from the text. After Dr. Hall read a portion Koehring Cranes found inflammatory, Koehring Cranes objected to the lack of foundation that the book was a learned treatise. The district court ruled,

> [W]hen Dr. Hall first read from this, it was being treated as a learned treatise. No objection was made at that time. And the fact that the initial materials read from may have been less objectionable to Defendant than the items that we're discussing now doesn't in the

Court's mind change whether it's a learned treatise or not. . . .

. . . Defense has had the opportunity to attack the authoritativeness of—of the book. And it seems to me that the balance here is that the Plaintiff can . . . introduce it. Defendant can attack it.

The objection was overruled. On redirect examination, Dr. Hall read the biography of the author from the book.

■ In order to preserve an issue for appeal, an objection to evidence must be made when the evidence is offered. *Howard*, 509 N.W.2d at 768. Additionally, the grounds of the objection must be specifically stated to inform the trial court of the basis for the complaint. *Id.* (holding that the grounds for the objection were not sufficiently specific to inform the trial court of the hearsay basis urged on appeal and as a result the defendant did not preserve error on his hearsay claim); *State v. Farni*, 325 N.W.2d 107, 109 (Iowa 1982) ("Objections to evidence must be sufficiently specific to inform the trial court of the basis for objecting."). Prior to the introduction of the text, Koehring Cranes objected to a lack of foundation "as to where this text comes from," but even had it objected to a lack of foundation that the book was a learned treatise, we would find no error because there was sufficient foundation.

■ A learned treatise is deemed reliable enough to qualify for an exception to the hearsay rule because generally they are prepared by an author with no bias in a particular case, who is aware that other experts in the field will read the treatise, and whose professional reputation is thus at stake.

As a foundation for introduction, the publication must be identified as a reliable authority and the offered statement within the treatise must be called to the attention of an expert witness on direct or cross-examination. The rule thus avoids the danger that the treatise will be misunderstood or misapplied by lay jurors by limiting its use as substantive evidence to situations where an expert is on the stand and available for questioning. Thus, a party offering a learned treatise may establish reliability through its own expert witness on direct examination or by its opponent's expert witness on cross-examination.

James A. Adams & Joseph P. Weeg, *Iowa Practice Series, Evidence* § 5.803:18 (2010).

■ We have reviewed Dr. Hall's testimony and the text read into the record by Dr. Hall. Dr. Hall's testimony established that the materials were reliable authority, and he was also cross-examined on the issue. Koehring Cranes' expert did not testify otherwise. The weight to be accorded to the expert testimony was for the jury. *See Heth v. Iowa City*, 206 N.W.2d 299, 302 (Iowa 1973) (stating once the test of admissibility has been met, the weight to be accorded to the evidence rests with the jury).

## V. Conclusion.

We first find there was a fact issue for the jury regarding whether there was a design defect and therefore, the district court did not err in denying Koehring Cranes' motion for a directed verdict. Next, because Koehring Cranes was asserting that Schmitt was one hundred percent at fault and did not introduce a third party or event as a cause, there was no evidence to support a sole proximate cause jury instruction and the district court did not err in denying Koehring Cranes' request for such instruction. Finally, we find the district court did not err in admit-

ting portions of an engineering handbook.
Therefore, we affirm.

**AFFIRMED.**