# IN THE SUPREME COURT OF IOWA

No. 07–2068

Filed September 24, 2010

**STATE OF IOWA,**

    Appellee,

vs.

**KYLE ANTHONY MARIN,**

    Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Linn County, Robert E. Sosalla, Judge.

A defendant requests further review of a court of appeals decision affirming his convictions for first-degree murder. **DECISION OF COURT OF APPEALS VACATED IN PART AND AFFIRMED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Dennis D. Hendrickson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Cristen Douglass (until withdrawal) and Elisabeth Reynoldson, Assistant Attorneys General, Harold Denton, County Attorney, and Jason Burns, Assistant County Attorney, for appellee.

**WIGGINS, Justice.**

Although the defendant raised numerous issues on appeal, in the exercise of our discretion we will only consider whether involuntary intoxication is a complete defense to a crime. The court of appeals decided the merits of this issue. Because the defendant failed to preserve error as to whether involuntary intoxication is a complete defense to any criminal liability and the jury instructions as given fairly state the law as applied to the facts of this case, we vacate that part of the court of appeals decision concerning the issue of involuntary intoxication and affirm the judgment of the district court.

### I. Background Facts and Proceedings.

On or about April 23, 2006, a father entered an apartment and found his eighteen-year-old daughter and another relative's body lying lifeless inside. The father immediately went outside and called 911 on his cell phone. Responding officers did a protective sweep of the apartment and discovered the victims' bodies, which were completely naked, as well as large pools of blood in the bathroom and blood elsewhere throughout the apartment. One of the officers noticed instruments on the bathroom vanity that did not appear to belong in a bathroom. It was evident from the scene that both victims had suffered trauma and had numerous visible wounds on their bodies. Eventually medical personnel arrived, checked the victims' vital signs, and pronounced them dead.

Later that same day, Kyle Marin walked into the lobby area of the Linn County Correctional Center. Debra Collins-Gallo was working that night behind a window in the lobby area as a duty officer. Collins-Gallo observed Marin in the lobby as she was helping some other individuals. After Marin made eye contact with her several times, Collins-Gallo asked

him if she could help him. Marin then approached the window and stated, "My name is Kyle Marin, and I'm here to turn myself in on two murders." Collins-Gallo was not sure if she understood Marin correctly so she asked him again what he said, to which Marin replied, "I'm turning myself in for two murders." Collins-Gallo then walked back to sergeant John Davidson's office and informed him a person in the lobby named Kyle Marin wanted to turn himself in for two murders. Davidson told Collins-Gallo to call the Cedar Rapids Police Department (CRPD) immediately and then went out to the lobby.

Shortly thereafter, three officers from the CRPD arrived. After a discussion with Marin, the officers transported him to the CRPD headquarters. Once Marin arrived at the headquarters, the officers took him to the detective bureau and turned him over to the investigators. After a detective interviewed Marin, he provided detailed facts confessing his involvement in the deaths of the two victims.

On April 23 evidence was seized from the crime scene, including but not limited to, blood samples, a hammer, a screwdriver, as well as a number of knives and other utensils. On April 24 a search warrant was executed on Marin's residence. On May 12 Marin was charged with two counts of first-degree murder, to which he pleaded not guilty.

Trial commenced on October 22, 2007. On October 30 the district court held a hearing outside the presence of the jury with regard to whether or not involuntary intoxication is a recognized defense in Iowa and, if so, what the enumerated elements of the defense should be. In support of its position, the defense submitted the following proposed instruction with regard to involuntary intoxication:

> "Involuntary intoxication" means a mental condition which does not allow the person to form a premeditated,

deliberate, specific intent to kill, which are elements of the State's burden of proof on the charge of First Degree Murder.

"Intoxication" is a state in which a person is affected temporarily with diminished control over the physical and/or mental powers, or is excited or stupefied by alcohol or a drug, or a combination thereof, to the point of frenzy, or to the point where physical or mental control is markedly diminished.

Intoxication is involuntary when it results from:

1. Fraud, trickery, or duress of another; or

2. Accident or mistake on his own part; or

3. A pathological condition; or

4. Ignorance as to the effects of prescribed medication.

You should determine from the evidence if the defendant was capable of premeditating, deliberating, and forming a specific intent to kill.

If you have a reasonable doubt the defendant was capable of acting deliberately, with premeditation, and the specific intent to kill, then the defendant cannot be guilty of First Degree Murder. You should then consider the lesser included charges.

After hearing arguments from both sides, the court told the parties it would not give the jury a separate instruction with regard to involuntary intoxication. Instead, the court gave the "intoxication as a defense" instruction contained in the Iowa State Bar Association's criminal instruction manual, which makes no distinction between voluntary and involuntary intoxication. The instruction provided:

The defendant claims he was under the influence of intoxicants and/or prescription drugs at the time of the alleged crime. The fact that a person is under the influence of intoxicants and/or prescription drugs does not excuse nor aggravate his guilt.

Even if a person is under the influence of an intoxicant and/or prescription drug, he is responsible for his act if he had sufficient mental capacity to form the specific intent necessary to the crime charged or had the specific intent

before he fell under the influence of the intoxicant and/or prescription drug and then committed the act. Intoxication is a defense only when it causes a mental disability which makes the person incapable of forming the specific intent.

Before closing arguments, the district court held a hearing with the parties to review its proposed jury instructions. The defense objected to the instructions due to the court's failure to include its requested instruction pertaining to involuntary intoxication. The court overruled the objection.

The jury found Marin guilty of first-degree murder for both victims' deaths. We transferred the case to the court of appeals. The court of appeals affirmed the district court's rulings and held the district court did not err in denying Marin's proposed jury instruction on involuntary intoxication because substantial evidence did not support the court giving the instruction. Marin filed an application for further review, which we granted.

## II. Issues.

Marin raises three issues on appeal. The first issue raised concerns the jury instruction regarding the element of malice aforethought. The second issue asks us to suppress certain statements Marin made to the police and the evidence seized through the execution of a search warrant as the fruit of the poisonous tree. The third issue deals with the proposed jury instruction on involuntary intoxication.

On further review, we have the discretion to review any issue raised on appeal. *Hills Bank & Trust Co. v. Converse*, 772 N.W.2d 764, 770 (Iowa 2009). In the exercise of our discretion, we choose only to address the issue dealing with the proposed jury instruction on involuntary intoxication. As to the other two issues raised in Marin's brief, we will let the court of appeals opinion stand as the final decision

in this appeal. *State v. Effler*, 769 N.W.2d 880, 883 (Iowa), *cert. denied*, ___ U.S. ___, 130 S. Ct. 1024, 175 L. Ed. 2d 627 (2009).

### III. Standard of Review.

We review challenges to jury instructions for correction of errors at law. *State v. Heemstra*, 721 N.W.2d 549, 553 (Iowa 2006); *State v. Rohm*, 609 N.W.2d 504, 509 (Iowa 2000); *see also* Iowa R. App. P. 6.907. "We review the related claim that the trial court should have given the defendant's requested instructions for an abuse of discretion." *Summy v. City of Des Moines*, 708 N.W.2d 333, 340 (Iowa 2006). Error in giving or refusing to give a particular instruction warrants reversal unless the record shows the absence of prejudice. *State v. Spates*, 779 N.W.2d 770, 775 (Iowa 2010). "When the error is not of constitutional magnitude, the test of prejudice is whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice." *State v. Gansz*, 376 N.W.2d 887, 891 (Iowa 1985).

### IV. Analysis.

Marin argues we should decide if involuntary intoxication is a complete defense to *any* crime he may have committed. At common law, if involuntary intoxication caused a defendant to become temporarily insane, the involuntary intoxication was recognized as a complete defense to any criminal liability. *City of Minneapolis v. Altimus*, 238 N.W.2d 851, 855–56 (Minn. 1976). When the legislature enacted Iowa's Criminal Code, it did not distinguish between voluntary and involuntary intoxication. *See, e.g.*, Iowa Code § 701.5 (2005). Instead, in regards to intoxication the Code provides:

> The fact that a person is under the influence of intoxicants or drugs neither excuses the person's act nor aggravates the person's guilt, but may be shown where it is

> relevant in proving the person's specific intent or recklessness at the time of the person's alleged criminal act or in proving any element of the public offense with which the person is charged.

*Id.*

We have never decided if a defendant can use involuntary intoxication as a complete defense to his or her criminal liability. We left the question unresolved in one of our decisions because substantial evidence did not support the submission of a temporary insanity by involuntary intoxication instruction. *State v. Lucas*, 368 N.W.2d 124, 127–28 (Iowa 1985). In this appeal, we do not reach this issue because Marin never requested an instruction including a statement that involuntary intoxication is a complete defense to any crime he may have committed, and he never objected to the instruction as given on the grounds it failed to state involuntary intoxication is a complete defense to any crime he may have committed. *See State v. Buckner*, 214 N.W.2d 164, 169 (Iowa 1974) (holding a defendant does not preserve error when he fails to request an instruction containing his legal issue or fails to object to the instructions given for not containing his legal issue). In fact, in a discussion with the court on the jury instructions, Marin's counsel acknowledged he understood that involuntary intoxication is not a complete defense to any crime Marin may have committed. Instead, his requested instruction only asserts involuntary intoxication would negate "premeditated, deliberate, specific intent to kill, which are elements of the State's burden of proof on the charge of First Degree Murder."

The requested instruction further stated, "If you have a reasonable doubt the defendant was capable of acting deliberately, with premeditation, and the specific intent to kill, then the defendant cannot be guilty of First Degree Murder. You should then consider the lesser

included charges." The requested instruction never informed the jury that involuntary intoxication was a complete defense to any other crimes Marin may have committed by taking the victims' lives, including the lesser-included crimes of first-degree murder. It only advised the jury that Marin's involuntary intoxication could negate his state of mind with regard to the charge of first-degree murder.

The instruction given by the court allowed the jury to consider Marin's intoxication in regards to the element of specific intent. The court instructed the jury that specific intent was an element of the crime of first-degree murder. The jury returned a verdict finding Marin guilty of two counts of first-degree murder. Inherent in the verdict is a finding that Marin acted with specific intent to kill. This means under the instructions as given by the court, Marin's intoxication, whether voluntary or involuntary, did not negate the state of mind necessary to find Marin guilty of first-degree murder.

The rules pertaining to jury instructions in civil cases apply equally to the trial of criminal cases. Iowa R. Crim. P. 2.19(5)(*f*). Consequently, the court is required to "instruct the jury as to the law applicable to all material issues in the case . . . ." Iowa R. Civ. P. 1.924. Moreover, the court is required to give a party's requested instruction so long as it " 'states a correct rule of law having application to the facts of the case and when the concept is not otherwise embodied in other instructions.' " *Summy*, 708 N.W.2d at 340 (emphasis removed) (quoting *Herbst v. State*, 616 N.W.2d 582, 585 (Iowa 2000)); *accord State v. Proctor*, 585 N.W.2d 841, 843 (Iowa 1998). In doing so, the court is not required to give any particular form of an instruction; rather, the court must merely give instructions that fairly state the law as applied to the facts of the case. *Graber v. City of Ankeny,* 616 N.W.2d 633, 642 (Iowa 2000).

Finally, we see no difference in the outcome of the case even if the court had given the instruction requested by Marin. The requested instruction and the one given by the court informed the jury it could use Marin's intoxication, whether voluntary or involuntary, to negate the state of mind necessary to be convicted of first-degree murder. The instruction given by the court on intoxication only included Marin's state of mind to form the specific intent to kill. Marin's requested instruction included acting deliberately and with premeditation in addition to specific intent as the states of mind Marin's intoxication could negate. However, in a separate instruction, the court instructed the jury on diminished responsibility.

The diminished responsibility instruction allowed the jury to find Marin suffered from a mental condition that would not allow him to form a premeditated, deliberate, specific intent to kill. This instruction also provided that if the jury found Marin had a mental condition that would not allow him to form a premeditated, deliberate, specific intent to kill, the jury cannot find him guilty of first-degree murder, but it should then consider the lesser-included offenses. The court gave the diminished responsibility instruction because the record contained evidence that Marin's mental condition caused by his intoxication would not allow him to form a premeditated, deliberate, specific intent to kill.

Jury instructions must be read in their entirety and not piecemeal. *Hagenson v. United Tel. Co. of Iowa*, 209 N.W.2d 76, 83 (Iowa 1973). The court instructed the jury that Marin's intoxication could prevent him from forming a premeditated, deliberate, specific intent to kill. The instructions given by the court also instructed the jury that, if they found Marin's intoxication prevented him from forming a premeditated, deliberate, specific intent to kill, its findings only went to the charge of

first-degree murder, not the lesser-included charges. Thus, the instructions given by the court contained the same law Marin requested in his proposed instruction. Consequently, under the record made in this case, the court did not err in refusing to substitute the proposed instruction for the one it submitted to the jury.

## V. Disposition.

We vacate that part of the court of appeals decision dealing with Marin's involuntary intoxication claim, and find Marin did not preserve the issue as to whether involuntary intoxication is a complete defense to any criminal liability. With respect to the objection that was made, we hold the jury instructions as given fairly state the law as applied to the facts of this case. Therefore, we vacate the decision of the court of appeals in part, affirm it in part, and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED IN PART AND AFFIRMED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Streit, J., who takes no part.