# IN THE SUPREME COURT OF IOWA

No. 09–0084

Filed December 17, 2010

**IN RE MARRIAGE OF TRACY ALAN HOWELL AND LISA ANN HOWELL,**

Upon the Petition of
**TRACY ALAN HOWELL,**

     Appellee,

And Concerning
**LISA ANN HOWELL,**

     Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Appanoose County, James Q. Blomgren, Judge.

A spouse seeks further review of a court of appeals' decision dividing the parties' assets upon the dissolution of their marriage. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED, CASE REMANDED WITH INSTRUCTIONS.**

Bryan J. Goldsmith of Gaumer, Emanuel, Carpenter & Goldsmith, P.C., Ottumwa, for appellant.

Allan C. Orsborn of Orsborn, Milani & Mitchell, L.L.P., Ottumwa, for appellee.

**PER CURIAM.**

A spouse seeks review of the district court's division of her husband's pension plan. The spouse contends the district court undervalued the plan and failed to divide the plan properly in accord with this court's precedent. Because the trial court failed to properly determine the plan's value and divide it in accordance with well-settled law, we vacate that portion of the court of appeals' decision concerning the pension plan, affirm the remainder of the court of appeals' decision, modify the district court's decree as it relates to the property settlement, and remand the case with instructions.

### I. Prior Proceedings.

Tracy Howell petitioned for dissolution of marriage from Lisa Howell after ten years of marriage. Tracy is a journeyman millwright and belongs to the Millwright Local Union 2158. Tracy is enrolled in the Carpenter's Pension Fund of Illinois, a defined benefit pension plan, through his union membership. The entire amount of the benefit due Tracy from the Carpenter's Pension Fund was accrued during the pendency of the marriage. Lisa requested the district court to divide the pension benefits equally using a qualified domestic relations order (QDRO) to provide Lisa survivorship benefits in the plan. In its decree, the court did not use a QDRO to divide the plan. Rather, the district court valued Tracy's interest in the Carpenter's Pension Fund at $3274.55 and awarded the fund to Tracy. Lisa subsequently filed a motion to enlarge or amend the decree. In her motion, she asked the court to reevaluate the Carpenter's Pension Fund and reconsider entering a QDRO allocating the benefits. The trial court denied Lisa's motion.

Lisa filed a timely notice of appeal. We routed the appeal to the court of appeals. Lisa's appeal raised numerous issues, including the valuation and division of the Carpenter's Pension Fund. The court of appeals decided all the issues raised on appeal. With respect to the pension fund, the court of appeals affirmed the district court's valuation and division. Lisa sought further review with this court, which we granted.

## II. Issues.

On further review, we have discretion to review all issues raised on appeal or limit our consideration to a particular issue. *State v. Marin*, 788 N.W.2d 833, 836 (Iowa 2010). In this appeal, we choose to exercise our discretion and we will only review the valuation and division of the Carpenter's Pension Fund. Therefore, the court of appeals' decision stands as the final decision for the other issues raised in this appeal. *Id.*

## III. Scope of Review.

We review marriage dissolution decrees de novo. *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007).

## IV. Facts.

On our de novo review, we find the following facts. The value of the Carpenter's Pension Fund is explained in two exhibits considered by the court. Exhibit CC is Tracy's Carpenter's Pension Fund statement for May 1, 2007. Exhibit CC covers the years 1998 to 2006. The statement lists the hours Tracy worked each year, the yearly contribution of his employers, the applicable benefit rate in the given year, and benefit and vesting credits for each year. There is also a column entitled "benefit amounts" which is derived by multiplying the employer's yearly contribution by the applicable benefit rate. At the bottom of each column is a row that reflects the total sum of each column. As of 2006,

Tracy had worked a sum of 19,135.75 hours and his employers had contributed $103,425.36 to his pension plan. The "benefit amounts" column reflects a sum total of $3274.55, and Tracy's "benefit amounts" is one hundred percent vested. It is unclear from this exhibit whether the $3274.55 is the present value of the pension fund on May 1 or the monthly benefit payable to him when he begins to draw his pension.

Exhibit CC–1, however, provides guidance on how to interpret Exhibit CC by providing an example of a hypothetical employee's benefits under the Carpenter's Pension Fund. The example uses an employee named Joe. The example multiplies Joe's employer contributions in given years by the applicable benefit rate in the corresponding years—the same formula used to calculate Tracy's "benefit amounts" in Exhibit CC. The example then adds these figures together to determine "*Joe's Monthly* Normal Retirement Benefit." (Emphasis added.) In other words, the example employee's "benefit amounts" are added together to determine the employee's monthly pension payment upon retirement.

Applying Exhibit CC–1's example in interpreting Tracy's Carpenter's Pension Fund statement, we find Tracy's vested "benefit amounts" of $3274.55 is not the present value of his pension but the vested monthly normal retirement benefit upon his retirement. Accordingly, the district court improperly concluded that $3274.55 was the present value of the Carpenter's Pension Fund for purposes of valuation and distribution.

### V. The Property Settlement.

Having found the district court improperly determined the value of the Carpenter's Pension Fund, we must determine the proper division of Tracy's pension. Under our prior case law, there are two accepted methods a court can use to divide and distribute pension benefits. *In re*

*Marriage of Benson*, 545 N.W.2d 252, 255 (Iowa 1996). The first method requires the court to ascertain the present value of the pension and then allocate accordingly. *Id.* We have stated this method is a disfavored division because the method is complex, requires expert witnesses such as benefits managers or actuaries to testify concerning the present value of a fund, and imposes economic difficulties upon the pensioner to pay a lump-sum amount to the other spouse. *In re Marriage of Sullins*, 715 N.W.2d 242, 248–49 (Iowa 2006). We have already determined the $3274.55 figure in Exhibit CC is not the Carpenter's Pension Fund's present value, and there is no other evidence in the record to establish the present value of the Carpenter's Pension Fund. *In re Marriage of Brown*, 776 N.W.2d 644, 651 (Iowa 2009) ("Absent detailed expert testimony involving mortality and discount rates, future contributions and other factors, an accurate present-value calculation was impossible."). Therefore, we decline to utilize the division method using present value.

The second method requires the court to divide the pension when the fund begins to pay monthly benefits. *In re Marriage of Benson*, 545 N.W.2d at 255. We have referred to this method as the percentage method. *Id.* We have articulated a percentage-method formula to divide pension funds. *Id.* Based upon this record, we hold the district court should have used a QDRO to divide the Carpenter's Pension Fund between Lisa and Tracy pursuant to the percentage-method formula as set forth in *Benson*.

Our determination that the court must divide the Carpenter's Pension Fund between Lisa and Tracy pursuant to the percentage-method formula requires an adjustment to the district court's property division. The district court decree credited the Carpenter's Pension

Fund, a $3274.55 value, to Tracy's share of the marital assets. Our determination in this appeal removes the Carpenter's Pension Fund from the division of assets, thus leaving Tracy with $3274.55 less in assets than Lisa. On remand, the district court needs to modify its property settlement to reflect this disparity.

## VI. Disposition.

We find the Carpenter's Pension Fund provides a vested monthly normal retirement benefit of $3274.55 upon maturity. We, therefore, remand the case to the district court with instructions to modify its decree by issuing a QDRO that divides the Carpenter's Pension Fund pursuant to the percentage-method formula under *Benson* and protects Lisa's surviving spouse status. The district court shall also modify its property settlement under the decree and order Lisa to pay Tracy $1637.28 to equalize the division of assets.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED, CASE REMANDED WITH INSTRUCTIONS.**

This opinion shall not be published.