# IN THE COURT OF APPEALS OF IOWA

No. 19-0314
Filed June 3, 2020

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**THOMAS ALLEN BIBLER,**
     Defendant-Appellant.

_____

Appeal from the Iowa District Court for Plymouth County, Jeffrey A. Neary, Judge.

Thomas Bibler appeals his conviction for second-degree murder. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Considered by Mullins, P.J., Greer, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**GAMBLE, Senior Judge.**

Thomas Bibler appeals his conviction for second-degree murder following a bench trial for the stabbing death of Shannon Bogh.  On appeal, Bibler claims he was entitled to judgment of acquittal because he was involuntarily intoxicated at the time of the stabbing.  We affirm.

**I. Background Facts and Prior Proceedings**

On June 11, 2016, Bibler attended work as a cook at a local restaurant.  The restaurant was busy, the kitchen was hot, and the shift was tense.  When he began his shift, Bibler was upset over visitation issues he was having with his ex-wife.  Over the course of the shift, Bibler became upset with another employee at the restaurant.  Bibler had a knife in his pocket and asked the employee, "[W]here do you want to feel the pain."  The knife had a brown or black handle with three metal studs.  It was not a kitchen knife.  Bibler also stated, "[I]f anyone messes with me tonight . . . ."  Bibler left work early that night.  But prior to leaving, Bibler took Lithium, Zolpidem,[1] and another unidentified medication.[2]  He went to his apartment and called his son.

Shannon was Tom Bibler's sister.  He had a warm relationship with her.  Shannon often helped Bibler with his problems.  She acted as a go-between with Bibler's ex-wife concerning visitation.

Bibler went to Shannon's house that evening after talking with his son.  Shannon was in the yard watering flowers.  Shannon's husband, Phil, came

---

[1] Zolpidem is the generic form of Ambien, a prescription sleep aid.  Bibler did not have a current prescription for the medication.

[2] Records indicate Bibler was also prescribed other medications.

outside to get the mail and noticed Bibler talking to Shannon. Suddenly, Phil heard Shannon exclaim, "Oh my god, what the fuck." Phil turned to see Shannon clutching her chest. Phil observed Bibler making a motion with his hands like folding a knife, but he did not see a knife in Bibler's hands. Bibler walked away, got in his truck, and left the home. Phil moved Shannon into the house. Phil's mother was inside. When she asked what happened, Shannon said, "Tom stabbed me."

Emergency services arrived at the home shortly thereafter. Shannon was conscious when first responders arrived. They administered first aid and transported Shannon to the local hospital. Shannon was pronounced dead upon arrival at the hospital. An autopsy later determined Shannon died by homicide as a result of a stab wound to her chest.

Officers went to Bibler's apartment to execute a search warrant. They found him asleep inside. Officers located several knives in the home, including one found on his nightstand. The knife had a black handle with three metal studs. The blade was wet with a drop of water, but its protective sheath was dry. However, no knife was definitely identified as the knife used to stab Shannon. But investigators did locate blood matching Shannon's DNA on the driver's side door near the power window button in Bibler's truck.

The police arrested Bibler and booked him into the county jail. Bibler informed the jailer of his medications including Alloperionor, Lithium, Vyvanse, and Respirdol. But Bibler did not tell the officer that he took Zolpidem or Ambien. Bibler did not inform the officers of his medicated state. So he was never tested to determine what substances were in his system at that evening.

4

Bibler was charged with first-degree murder, willful injury, and going armed with intent. Bibler waived his right to trial by jury and the matter proceeded to a bench trial. At trial, Bibler advanced two theories. First, he claimed Phil was the killer not him. Second, he claimed diminished responsibility due to involuntary intoxication. He argued his involuntary intoxication served as a complete defense.

Accepting Bibler's testimony that he took Zolpidem as true, the court found

> that Bibler did not act in a premeditated manner and that he lacked the specific intent to kill Shannon Bogh as a result of his use of a sleep aid (Zolpidem) in conjunction with an antidepressant which prevented him from being able to form the specific intent required to commit murder in the first degree.

So the court found him guilty of second-degree murder instead. But the court found him not guilty of willful injury and going armed with intent because he was incapable of forming specific intent due to his intoxication.

Bibler appeals.

## II. Scope and Standard of Review

We review sufficiency-of-the-evidence challenges for correction of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). "The district court's findings of guilt are binding on appeal if supported by substantial evidence. Evidence is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Hearn*, 797 N.W.2d 577, 579–80 (Iowa 2011) (quoting *State v. Hanson*, 750 N.W.2d 111, 112 (Iowa 2008)). We consider the evidence "in the light most favorable to the trial court's decision." *Id.* at 580 (quoting *State v. Taylor*, 689 N.W.2d 116, 131 (Iowa 2004)). When considered as a whole, the evidence—including legitimate inferences—must permit a reasonable factfinder to conclude the defendant is guilty beyond a reasonable doubt. *Id.* If

the evidence "merely raises suspicion, speculation, or conjecture" it is insufficient. *Id.* (quoting *State v. Casady*, 491 N.W.2d 782, 787 (Iowa 1992)).

"Likewise, our review of a statutory interpretation by the district court is for the correction of errors at law. We are not bound by the district court's application of legal principles or conclusions of law." *State v. Schultz*, 604 N.W.2d 60, 62 (Iowa 1999) (internal citations omitted).

**III. Discussion**

Bibler claims he was entitled to judgment of acquittal because involuntary intoxication, unlike voluntary intoxication, amounts to "a complete defense from criminal liability."

Our supreme court has observed, "At common law, if involuntary intoxication caused a defendant to become temporarily insane, the involuntary intoxication was recognized as a complete defense to any criminal liability." *See State v. Marin*, 788 N.W.2d 833, 836 (Iowa 2010), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 & n.3 (Iowa 2016). However, the *Marin* court noted, we have never decided if a defendant can use involuntary intoxication as a complete defense to his or her criminal liability. *Id.* at 837. Ultimately, the court determined the appellant "did not preserve the issue as to whether involuntary intoxication is a complete defense to any criminal liability." *Id.* at 838.

In *State v. Lucas*, the defendant claimed someone "slipped him a mickey" and he was not responsible for a murder due to involuntary intoxication. *See* 368 N.W.2d 124, 126 (Iowa 1985). And the State conceded Iowa Code section 701.5 (1982) "does not prohibit the use of temporary insanity by involuntary intoxication

as a complete defense." *Id.* at 128. But our supreme court found "little more than a chain of wraithlike speculations, which neither separately nor together constitute the substantial evidence necessary to warrant submission of the insanity instruction to the jury" based on the defendant's intoxication. *Id.* at 127–28.

Following *Marin* and *Lucas*, Bibler argues it is an open question in Iowa whether involuntary intoxication is a complete defense. *See City of Minneapolis v. Altimus*, 238 N.W.2d 851, 857 (Minn. 1976) (recognizing involuntary intoxication as a defense). However, contrary to its concession in *Lucas*, the State argues Iowa Code section 701.5 (2016) supersedes the common law and treats involuntary intoxication and voluntary intoxication in the same manner to render a person incapable of forming specific intent but does not wholly excuse criminal conduct.

Bibler introduced substantial evidence supporting the defense of intoxication. While he did not inform the booking officer that he had taken Zolpidem and there was no toxicology study to determine what substances were present in his system at the time of his arrest, Bibler testified he took Zolpidem and Lithium along with another drug before he left the restaurant.

During a competency examination, Bibler told a clinical psychologist, Dr. Angela Stokes, Ph.D., that when he had a bad day, he took Zolpidem to calm himself. He described June 11, 2016, as a bad day. He recalled leaving work because it was a rough day, taking his medication, and heading home. He did recall calling his son. He did not remember going to Shannon's house. The next thing he remembered was being awakened by police. In her report, Dr. Stokes opined Bibler was suffering from an active mental disease or defect caused by

involuntary intoxication and would not have been able to know or appreciate the nature, quality, or wrongfulness of his conduct. At trial, Dr. Stokes testified Bibler had no willful or malicious intent to commit any crime. She reviewed medical journals, studies, and reports indicating that the use of Zolpidem and antidepressants can cause amnesia or a high risk of amnesia.

Dr. Stephen Waller, Associate Dean of Pharmacology at the University of South Dakota testified to the following statements. Zolpidem can cause amnesia, agitation, psychoses, aggression, adverse sleep-induced behaviors, and periods of disinhibitions. If sleep does not promptly begin after taking Zolpidem, the risk of negative side effects increases. The risk is greatest in the first ninety minutes after taking Zolpidem. A person under the influence of Zolpidem may not understand what they are doing and may make bad decisions. The use of Zolpidem with antidepressants can cause hallucinations, intensify depression, and long-lasting psychotic episodes.

While we might reasonably question whether Bibler took Zolpidem as prescribed and whether he had been advised of possible side effects, we conclude the question of whether Bibler was voluntarily or involuntarily intoxicated is immaterial. While common law previously recognized a distinction between voluntary and involuntary intoxication, our legislature codified the intoxication defense in 1979 and eliminated any distinction.[3] *See* Iowa Code § 701.5 (1979);

---

[3] We acknowledge in *State v. Hall* our supreme court considered whether a defendant's intoxication was voluntary or involuntary when determining whether the defendant was entitled to an insanity instruction and potentially a complete defense. *See* 214 N.W.2d 205, 207–08 (Iowa 1974). But *Hall* was decided five years prior to the legislature's enactment of Iowa Code section 701.5. So it does little to aide our analysis today.

*Houston v. State*, No. 14-1632, 2015 WL 4632520, at *2 (Iowa Ct. App. Aug. 5, 2015) (recognizing Iowa Code section 701.5 (2011) does not distinguish between voluntary and involuntary intoxication). The statute remains unchanged in substance. *See State v. Guerrero Cordero*, 861 N.W.2d 253, 260 n.4 (Iowa 2015) (noting the only change to the statute changed "his or her" to "the person's"), *abrogated on other grounds by Alcala*, 880 N.W.2d at 708. And we apply the statute as codified by our legislature instead of inconsistent prior common law. *See* Iowa Code § 4.2 (2016) ("The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this Code. Its provisions and all proceedings under it shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice."); *Iowa Farm Bureau Fed'n v. Envtl. Prot. Comm'n*, 850 N.W.2d 403, 439 (Iowa 2014) (Waterman, J., concurring in part and dissenting in part) (citing to section 4.2 to demonstrate the legislature overruled the rule of construction that statutes are presumed to not repeal the common law).

Specifically, Iowa Code section 701.5 provides:

> The fact that a person is under the influence of intoxicants or drugs neither excuses the person's act nor aggravates the person's guilt, but may be shown where it is relevant in proving the person's specific intent or recklessness at the time of the person's alleged criminal act or in proving any element of the public offense with which the person is charged.

We apply our traditional tools of statutory interpretation to determine the statute's meaning. "Our primary goal is to give effect to the intent of the legislature." *Hearn*, 797 N.W.2d at 583 (citation omitted). We first look to the words used in the statute to discern the legislature's intent. *See id.* ("That intent is

evidenced by the words used in the statute." (citation omitted)); *McGill v. Fish*, 790 N.W.2d 113, 118 (Iowa 2010) (noting "the statute in dispute is our starting point"). When the language used is unambiguous, we look no further than the express terms of the statute. *Finders*, 743 N.W.2d at 548. In fact, "[w]hen a statute is plain and its meaning clear, [we] are not permitted to search for meaning beyond its express terms." *Hearn*, 797 N.W.2d at 583. And absent statutory definitions, "we give words their ordinary meaning." *Id.* While we recognize the rule of lenity requires statutes establishing the scope of criminal liability be strictly construed in favor of the defendant, the rule of lenity is only applicable when statutes are ambiguous. *Id.* at 585.

Here, the language of section 701.5 is clear and unambiguous. It provides no distinction between persons voluntarily or involuntarily under the influence of intoxicants. We will not reach beyond the legislature's words to create our own distinction when the legislature declined to do so. "Our legislature has spoken. It has addressed the subject of intoxicants or drugs in Iowa Code section 701.5. It has expressed the view that these agents are relevant to specific intent but do not generally excuse the person's acts." *Houston*, 2015 WL 4632520, at *3. Therefore, contrary to Bibler's assertion, his purported intoxication, involuntary or not, does not provide him with a complete defense. Rather, it negates specific intent just as the district court determined.

We find no error in the district court's refusal to recognize involuntary intoxication as a complete defense to the charged offense. We find sufficient evidence supports Bibler's conviction for second-degree murder.

**AFFIRMED.**