# IN THE SUPREME COURT OF IOWA

No.19–1878

Submitted December 15, 2021—Filed January 28, 2022

**STATE OF IOWA,**

Appellee,

vs.

**KURT ALLEN KRAAI,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Osceola County, Don E. Courtney, Judge.

The defendant appeals his conviction for sexual abuse in the second degree, claiming the district court erred in instructing the jury the testimony of the complainant witness need not be corroborated to be accepted as true. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Pamela Wingert (argued) of Wingert Law Office, Spirit Lake, for appellant.

Thomas J. Miller, Attorney General, Louis S. Sloven (argued), and Susan R. Krisko, Assistant Attorneys General, for appellee.

**McDONALD, Justice.**

Kurt Kraai was convicted of sexual abuse in the second degree arising out of the sexual abuse of his daughter, N.F. The primary witnesses at trial were N.F., who testified to the acts of sexual abuse, and Kraai, who denied the allegations of sexual abuse. In this direct appeal, Kraai contends the district court erred in instructing the jury that "[t]here is no requirement that the testimony of a complainant of sexual offenses be corroborated." Kraai contends the instruction violated Iowa Code section 709.6 (2017), which provides that "[n]o instruction shall be given in a trial for sexual abuse cautioning the jury to use a different standard relating to a victim's testimony than that of any other witness to that offense or any other offense." Kraai also contends the instruction, given without any other instruction regarding other witness testimony, unduly emphasized the testimony of N.F. The court of appeals concluded the instruction was erroneous but the error was not prejudicial under the circumstances presented. Both the State and Kraai applied for further review, and we granted the applications.

I.

We first address the question of whether the district court erred in instructing the jury that there is no requirement that the testimony of a complainant of sexual offenses be corroborated. Our review is for the correction of legal error. *See State v. Rohm,* 609 N.W.2d 504, 509 (Iowa 2000) (en banc). In conducting our review, we review the instructions "as a whole to determine their accuracy." *State v. Donahue,* 957 N.W.2d 1, 10 (Iowa 2021). A challenged

instruction is "judged in context with other instructions relating to the criminal charge, not in isolation." *State v. Liggins*, 557 N.W.2d 263, 267 (Iowa 1996). An incorrect or improper instruction can be cured "if the other instructions properly advise the jury as to the legal principles involved." *Thavenet v. Davis*, 589 N.W.2d 233, 237 (Iowa 1999) (en banc).

A.

Iowa Code section 709.6 provides that "[n]o instruction shall be given in a trial for sexual abuse cautioning the jury to use a different standard relating to a victim's testimony than that of any other witness to that offense or any other offense." The court of appeals, sitting en banc, provided a comprehensive history of the law relating to the enactment section 709.6. Having little to add to the court of appeals' historical discussion, we quote it at length here:

> Through much of the twentieth century, Iowa courts uniformly instructed juries that because "rape is easy to charge and difficult to disprove," the word of a "prosecutrix" was not enough, standing alone, to convict her assailant. *See State v. Feddersen*, 230 N.W.2d 510, 514 (Iowa 1975) [(en banc)] (citing *State v. Griffith*, 45 N.W.2d 155 (Iowa 1950)). That pernicious and outdated caution is dubbed the Lord Hale instruction, named for England's Sir Matthew Hale, chief justice of the Court of the King's Bench from 1671 to 1676. *See Mark v. State*, 556 N.W.2d 152, 154 (Iowa 1996) (citing *Feddersen*, 230 N.W.2d at 514–15). In his writings, Hale recounted allegations of rape instigated by false accusations. *See People v. Rincon-Pineda*, 538 P.2d 247, 255 (Cal. 1975). Hale also heartily encouraged that rape "be punished with death." *Feddersen*, 230 N.W.2d at 514.
>
> Under Iowa law, a defendant could not be convicted of rape "upon the testimony of the person injured, unless she be corroborated by other evidence tending to connect the defendant with the commission of the offense." *See* Iowa Code § 782.4 (1973). But in 1974, the legislature removed the need for corroborative evidence in rape prosecutions. *Feddersen*, 230 N.W.2d at 514. Our supreme court followed suit, disapproving the Lord Hale instruction the next

year. *Id. Feddersen* found "at least four vices" in the cautionary instruction:

> First, it constitutes a comment on the evidence. Second, it applies a stricter test of credibility to the rape victim than to other witnesses in the trial. Third, it applies a stricter test of credibility to rape victims than to victims of other crimes. Fourth, trial courts have been accorded an indiscriminate right to give or refuse to give the instruction absent any guidelines for so doing.

*Id.* at 515.

> After *Feddersen,* the legislature enacted section 709.6 to ensure that juries applied the same standard to the testimony of alleged victims of sexual abuse as other witnesses.

*State v. Kraai,* No. 19–1878, 2021 WL 1400366, at *2–3 (Iowa Ct. App. Apr. 14, 2021) (en banc).

Given that background, we cannot conclude the noncorroboration instruction given in this case violated section 709.6. The statute only prohibits the district court from "cautioning the jury to use a different standard relating to a victim's testimony than that of any other witness to that offense or any other offense." Iowa Code § 709.6. The challenged instruction, on its face, did not caution the jury to use a different standard relating to the victim's testimony than that of any other witness. Instead, the noncorroboration instruction told the jury that the complainant witness's testimony need not be corroborated. This was a correct statement of law. *See* Iowa R. Crim. P. 2.21(3) ("Corroboration of the testimony of victims shall not be required."); *State v. Hildreth,* 582 N.W.2d 167, 170 (Iowa 1998) (stating that "the alleged victim's testimony is by itself sufficient to constitute substantial evidence of defendant's guilt," and observing that "[t]his court has held that a rape victim's accusation need not be

corroborated by physical evidence"); *State v. Knox*, 536 N.W.2d 735, 742 (Iowa 1995) (en banc) ("The law has abandoned any notion that a rape victim's accusation must be corroborated."). The noncorroboration instruction was also consistent with the purpose of section 709.6, which was passed to abolish the anachronistic Lord Hale rule requiring corroboration of a complainant's testimony to sustain a conviction for sexual abuse.

B.

Although the noncorroboration instruction was not in violation of section 709.6 and was a correct statement of the law, the instruction was nonetheless improper because it unduly emphasized the complainant witness's testimony. "Iowa law requires a court give a requested instruction as long as the instruction is a correct statement of law, is applicable to the case, and is not otherwise embodied elsewhere in the instructions." *Eisenhauer ex rel. T.D. v. Henry Cnty. Health Ctr.*, 935 N.W.2d 1, 10 (Iowa 2019). However, the district court may not "give instructions that provide undue emphasis to any particular aspect of the case." *Id.* (citing *Burkhalter v. Burkhalter*, 841 N.W.2d 93, 106 (Iowa 2013)). Nor should the district court give instructions that "draw attention to specific evidence" in a case. *State v. Marsh*, 392 N.W.2d 132, 133 (Iowa 1986).

This court has long held that instructions that set apart, highlight, or accentuate the testimony of a particular witness or a particular piece of evidence are improper. In *State v. Bester*, this court considered an instruction that stated the defendant's testimony need not be received "as true" but could be given "full and careful consideration" in order to determine "whether it or any part of it [was]

true or false, and whether such testimony [was] given by the defendant in good faith or for the purpose of avoiding conviction." 167 N.W.2d 705, 706 (Iowa 1969). The instruction further stated that the jury could "take into consideration [the defendant's] interest in the outcome of [the] case as a person charged with a crime," giving it "such weight as [deemed] it entitled to in view of all the facts and circumstances." *Id.* The district court also gave a general instruction on how the jury should assess the credibility of all witnesses, including the interests of the witnesses in the outcome of the trial, their motives, candor, fairness, bias, and reasonableness of the testimony. *Id.* at 706–07. We held that it was reversible error to "single[] out and comment[] upon the testimony of a defendant" because it was "of prime importance to [the] defendant that the case not be weakened by special judicial comment on [his] interest in the case and the weight to be given his testimony as distinguished from the testimony of other witnesses." *Id.* at 710.

This court revisited *Bester* in *State v. Nepple*, 211 N.W.2d 330, 332 (Iowa 1973). In that case, the jury was given two instructions regarding witness credibility. *Id.* The first was a "general instruction on credibility, applicable to all witnesses," but the second was an instruction that the "defendant's testimony should not be discredited because he was charged with a crime; his testimony was to be treated like that of any other witness." *Id.* This court stated that the instruction was not "as offensive" as the instruction in *Bester* but was nonetheless erroneous "because it violate[d] the rationale of *Bester* that instructions relating to the credibility of a witness should be general and apply equally to all of the witnesses for the State and defendant alike." *Id.* This was

true even though the instruction in *Nepple* was given to bolster the defendant's testimony.

In *State v. Milliken*, the defendant was convicted of operating a motor vehicle while under the influence of alcohol. 204 N.W.2d 594, 595 (Iowa 1973). The defendant objected to two jury instructions relating to specific evidence. *Id.* The first instruction told the jury that the presence of the odor of liquor on the defendant's breath was not in itself proof he was under the influence of an alcoholic beverage. *Id.* The second instruction told the jury it was not necessary for the State to prove or show how many drinks the defendant had consumed. *Id.* We held the instructions were improper, stating "an instruction which gives undue prominence to evidentiary facts to be determined by the jury is erroneous, as it thereby unduly magnifies the importance of the particular testimony thus selected for specific mention." *Id.* at 596 (quoting *State v. Proost*, 281 N.W. 167, 170 (Iowa 1938)).

As in *Bester, Nepple*, and *Milliken*, the district court's noncorroboration instruction in this case focused the jury on the testimony of a single witness, N.F. *See Ludy v. State*, 784 N.E.2d 459, 461 (Ind. 2003) (stating an asymmetrical noncorroboration instruction "unfairly focuses the jury's attention on and highlights a single witness's testimony"). The instruction's focus was improper in two respects. First, the instruction set apart N.F.'s testimony as not requiring corroboration in the absence of a symmetrical instruction regarding the noncorroboration of Kraai's testimony. The omission of a symmetrical noncorroboration instruction may have permitted the jury to infer that Kraai's

testimony required corroboration to be believed. *See State v. Davis*, 951 N.W.2d 8, 19 n.1 (Iowa 2020) ("When the marshaling instructions for the other nine offenses cross-referenced the insanity defense but not the instruction for first-degree murder, the jurors would reasonably conclude that omission was intentional and the defense was unavailable."). The asymmetrical noncorroboration instruction thus risked giving N.F.'s testimony "special status" and "an extra element of weight" when compared to Kraai's testimony. *Gutierrez v. State*, 177 So. 3d 226, 232 (Fla. 2015).

Second, the instruction particularized N.F.'s testimony as not requiring corroboration in the absence of a universal instruction regarding the noncorroboration of all other witness testimony. Compare the instruction at issue in this case with that at issue in *State v. Ludwig*, 305 N.W.2d 511, 512 (Iowa 1981). In that case, this court distinguished *Bester* and held that an instruction that provided guidance in evaluating witness testimony was not improper because the instruction applied to all witnesses. *Id.* at 512–13. The district court in *Ludwig* instructed the jury to consider, among other factors, "whether [witness] testimony is corroborated or contradicted by other witnesses." *Id.* at 512. Because the challenged instruction "by its terms [applied] to all witnesses who testif[ied] at trial," it "did not carry with it the danger of distinguishing defendant's testimony from that of other witnesses." *Id.* The district court's instruction was thus an acceptable instruction regarding witness credibility that applied "equally to all of the witnesses for the State and the

defendant alike." *Id.* (quoting *Bester*, 167 N.W.2d at 708); *see Nepple*, 211 N.W.2d at 332.

In *Gutierrez v. State*, the Supreme Court of Florida reached the same conclusion we reach today: an asymmetrical and particularized noncorroboration instruction given in a sexual abuse case is improper. 177 So. 3d at 229–30. At issue in *Gutierrez* was a "special instruction advising the jury that the testimony of the victim need not be corroborated." *Id.* at 228. The instruction accurately reflected the law, but the defendant argued on appeal that the instruction "improperly emphasize[d] the victim's testimony and suggest[ed] it is deserving of special treatment." *Id.*; *see* Fla. Stat. § 794.022(1) (stating the testimony of a victim need not be corroborated in prosecutions for sexual offenses). The court agreed, writing that the noncorroboration instruction was

> [I]mproper because it constitutes a comment on the testimony presented by the alleged victim and presents an impermissible risk that the jury will conclude it need not subject the victim's testimony to the same tests for credibility and weight applicable to other witnesses.

*Gutierrez*, 177 So. 3d at 229–30. While the instruction was a correct statement of Florida law, its potential to mislead made it "simply improper" regardless of whether corroboration of the victim-witness's testimony was at issue. *Id.* at 232.

Other courts have reached the same conclusion. *See, e.g.*, *Burke v. State*, 624 P.2d 1240, 1257 (Alaska 1980) ("In our view, to instruct that a victim's testimony need not be corroborated by other evidence unduly emphasizes the lack of a need for corroboration without similarly indicating that other witnesses'

testimony need not be corroborated."); *Ludy*, 784 N.E.2d at 461 (concluding noncorroboration instruction should not have been given because "it unfairly focuses the jury's attention on and highlights a single witness's testimony"); *State v. Williams*, 363 N.W.2d 911, 914 (Minn. Ct. App. 1985) (concluding noncorroboration instruction "was erroneous and diminished the State's burden of proof"); *State v. Stukes*, 787 S.E.2d 480, 482–83 (S.C. 2016) (holding noncorroboration instruction was erroneous because "[s]pecifying this qualification applies to one witness creates the inference the same is not true for the others"); *Veteto v. State*, 8 S.W.3d 805, 816 (Tex. App. 2000) ("Although an accurate statement of the law, we agree with Veteto that the charge still had the force and effect of an instruction that a conviction could be had only on A.L.'s testimony; it singled out her testimony. . . . [E]ven though the legislature provides for convictions based on uncorroborated evidence, a charge based on that evidence is an improper comment on the weight of the evidence."), *abrogated on other grounds by State v. Crook*, 248 S.W.3d 172 (Tex. Crim. App. 2008); *Garza v. State*, 231 P.3d 884, 890–91 (Wyo. 2010) (holding noncorroboration instruction was a correct statement of law but was improper because "an instruction highlighting or denigrating a victim's testimony has the potential to mislead the jury").

Not all courts are in agreement on this issue. Several have approved of the asymmetrical and particularized noncorroboration instruction. *See, e.g.*, *People v. Welch*, Crim. No. 90–00008A, 1990 WL 320365, at *2 (D. Guam. App. Div. Oct. 30, 1990) (holding noncorroboration instruction was not improper because

when "reviewed in context, it does not appear that the instruction implied to the jury that they should give special consideration to the victim's testimony"), *aff'd*, 958 F.2d 377 (9th Cir. 1992); *People v. Gammage*, 828 P.2d 682, 687 (Cal. 1992) ("[T]here remains a continuing vitality in instructing juries that there is no legal requirement of corroboration."); *Mency v. State*, 492 S.E.2d 692, 700 (Ga. Ct. App. 1997) (holding asymmetrical noncorroboration instruction "was an appropriate statement of relevant law" when coupled with instructions regarding the burden of proof); *People v. Smith*, 385 N.W.2d 654, 657 (Mich. Ct. App. 1986) (per curiam) (approving noncorroboration instruction because it was an accurate statement of the law and because defendant made the lack of corroboration an issue in closing arguments); *Pitts v. State*, 291 So. 3d 751, 758 (Miss. 2020) (en banc) (holding noncorroboration instruction was "an accurate statement of the law" that "did not constitute an improper comment on the weight of the evidence"); *Gaxiola v. State*, 119 P.3d 1225, 1232 (Nev. 2005) ("A 'no corroboration' instruction does not tell the jury to give a victim's testimony greater weight, it simply informs the jury that corroboration is not required by law."); *State v. Marti*, 732 A.2d 414, 420–21 (N.H. 1999) (holding noncorroboration instruction was "merely a correct statement of law"); *State v. Clayton*, 202 P.2d 922, 923 (Wash. 1949) (holding noncorroboration instruction in child sexual abuse trial was a correct statement of the law that "expressed no opinion as to the truth or falsity of the testimony of the prosecutrix, or as to the weight which the court attached to her testimony").

Having given careful attention to these contrary authorities, we do not find their reasoning persuasive. *See Handeland v. Brown*, 216 N.W.2d 574, 577 (Iowa 1974) (en banc) ("Although cases from other states may be persuasive authority, they have no greater cogency than the reasoning by which they were decided."). In particular, the rationale in these contrary authorities is in conflict with our long-standing precedents—as expressed in *Bester, Nepple*, and *Milliken*—that instructions regarding witness credibility should apply equally to witnesses for the state and the defense and that instructions should not draw attention to specific evidence. *See, e.g., Olson v. Prosoco, Inc.*, 522 N.W.2d 284, 287 (Iowa 1994) (en banc) ("[E]ven instructions correctly stating the law should not give undue emphasis to any particular theory, defense, stipulation, burden of proof, or piece of evidence."); *State v. Massick*, 511 N.W.2d 384, 386 (Iowa 1994) (stating the instructions should not give "undue prominence" to certain evidence in the case); *Nepple*, 211 N.W.2d at 332; *Milliken*, 204 N.W.2d at 596; *Bester*, 167 N.W.2d at 710; *State v. Engle*, 590 N.W.2d 549, 552 (Iowa Ct. App. 1998) ("In fashioning jury instructions, a trial judge should avoid drawing attention to specific evidence.").

The State appears to acknowledge that the challenged instruction potentially shined light on N.F.'s testimony and left the remaining witnesses' testimony in comparative darkness. The State contends the noncorroboration instruction was nonetheless both necessary and proper to dispel "misconceptions about the insufficiency of uncorroborated testimony" that "still follow jurors into the courtroom." The State relies on social science research and

caselaw stating that jurors may be reluctant to convict defendants of sex crimes based on uncorroborated victim testimony. *See, e.g., State v. Barnhardt*, No. 17–0496, 2018 WL 2230938, at \*4 (Iowa Ct. App. May 16, 2018); *Gaxiola*, 119 P.3d at 1233. The State also argues that some jurors in this case expressed during voir dire a desire for corroborative evidence of the alleged victim's testimony and that this proves the social science research regarding the misconceptions about the insufficiency of uncorroborated evidence.

We recognize the State's interest in prosecuting sexual offenses and the difficult problems of proof inherent in many sex offense cases. However, it is not the function of the courts to assist the government in the prosecution of criminal cases by emphasizing the complainant's testimony over all other testimony, including the defendant's. That is contrary to long-established law in this state. To the extent the State has an interest in dispelling the misconceptions regarding the insufficiency of uncorroborated testimony of an alleged victim, those interests can be advanced by a nonparticularized instruction applicable to all witness testimony. An instruction that stated no witness's testimony needs to be corroborated (with some exceptions not applicable here) would correctly state the law and help dispel any misconceptions regarding uncorroborated witness testimony. *Cf. State v. Altmayer*, No. 18–0314, 2019 WL 476488, at \*5 (Iowa Ct. App. Feb. 6, 2019) (approving noncorroboration instruction that provided the jury "should evaluate the testimony of [the alleged victim] the same way [it] evaluate[d] the testimony of any other witness").

C.

Our conclusion that the challenged noncorroboration instruction unduly emphasized N.F.'s testimony, and was thus improper, does not end the inquiry. "Jury instructions are not considered separately; they should be considered as a whole." *Davis*, 951 N.W.2d at 17 (quoting *State v. Fintel*, 689 N.W.2d 95, 104 (Iowa 2004)). If a particular instruction "was given improperly, the error is cured if the other instructions properly advise the jury as to the legal principles involved." *Thavenet*, 589 N.W.2d at 237.

In this case, the State contends that other instructions, taken together, did properly advise the jury on the applicable legal principles and cured any error. These other instructions include instruction 5, which directed the jury to "consider all of the instructions together" and stated that "[n]o one instruction includes all of the applicable law." Instruction 7 stated that nothing the judge had "said or done during the trial was intended to given any opinion as to the facts, proof, or what [the] verdict should be." Instruction 9 directed jurors to "[g]ive all the evidence the weight and value you think it is entitled to receive." Instruction 10 was a general weighing instruction. It directed jurors to consider all evidence and attempt to reconcile any evidentiary conflicts. It also stated that jurors could believe "all, part or none of any witness's testimony" and provided jurors with a nonexclusive list of factors to consider in weighing the evidence. Instruction 11 defined reasonable doubt and said that the State bore the burden of proving Kraai guilty beyond a reasonable doubt.

We cannot conclude these additional general instructions rectified the error in giving the asymmetrical and particularized noncorroboration instruction. The improper instruction highlighted the testimony of N.F. and instructed the jury that her testimony did not require corroboration to be believed. None of the other general instructions discussed this legal principle, let alone cured the improper instructional taint. If anything, the instructional error necessarily was channeled into the general instructions. For example, instruction 10 told the jury they could believe "all, part or none of any witness's testimony," but, in determining which witnesses to believe, the jury evaluated N.F.'s testimony in light of the noncorroboration instruction that uniquely accentuated her testimony over all others. The same concern arises with respect to the reasonable doubt instruction. While the jury was correctly instructed that the State bore the burden of proving Kraai guilty beyond a reasonable doubt, the jury was determining whether the State satisfied its burden in light of the noncorroboration instruction that uniquely accentuated N.F.'s testimony over all others. In short, none of the general instructions cured the specific instructional error at issue.

## D.

In sum, we hold the district court erred in instructing the jury that "[t]here is no requirement that the testimony of a complainant of sexual offenses be corroborated." In the absence of any other instruction regarding the uncorroborated testimony of other witnesses, the instruction unduly emphasized the complainant witness's testimony.

II.

We next address whether the error in this case requires reversal and remand for new trial. "Error in giving or refusing to give a jury instruction does not warrant reversal unless it results in prejudice to the complaining party." *State v. Plain*, 898 N.W.2d 801, 817 (Iowa 2017) (quoting *State v. Hoyman*, 863 N.W.2d 1, 7 (Iowa 2015)). When a court erroneously gives or refuses a jury instruction, "we presume prejudice and reverse unless the record affirmatively establishes there was no prejudice." *State v. Hanes*, 790 N.W.2d 545, 551 (Iowa 2010). "When the error is not of constitutional magnitude, the test of prejudice is whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice." *State v. Marin*, 788 N.W.2d 833, 836 (Iowa 2010) (quoting *State v. Gansz*, 376 N.W.2d 887, 891 (Iowa 1985)), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016). The presumption of prejudice is overcome when the jury received "strong evidence" of a defendant's guilt. *See Plain*, 898 N.W.2d at 817.

Here, there was strong evidence of Kraai's guilt, including substantial corroboration of N.F.'s testimony. N.F. testified to multiple instances of sexual abuse. The first instances of sexual abuse occurred when N.F. was approximately nine years old. At that time, N.F. lived with her mother and visited Kraai every other weekend. Kraai lived with his mother (N.F.'s grandmother) and his two brothers at his mother's house near Rembrandt, Iowa. N.F. testified that on multiple occasions Kraai "pull[ed] up some naughty things on the computer"

that involved peoples' "private parts touching." While watching the pornography on the computer, Kraai made N.F. "touch his private parts" with her hand. N.F. testified that she did not like touching Kraai's penis and that it was "[s]limy and disgusting." The touching occurred on a couch in a bedroom that was formerly occupied by one of Kraai's brothers. In addition, N.F testified that during these visits she would sometimes "wake up with no clothes on." N.F. said she never told her grandmother about the abuse because she was "scared" and because Kraai told her that "something would happen." Kraai himself testified he often hit N.F. and her half-brother.

Later, Kraai moved out of his mother's house to an area near Harris, Iowa, where he took a job on a hog farm. N.F. testified Kraai sexually abused her at this location as well. She testified pornographic DVDs and magazines were openly scattered around the house. She testified Kraai showed her pornographic and sexual material on the television in the living room and showed her magazines containing pornographic and sexual material. N.F. testified the sexual abuse occurred on the couch in the living room. She testified about a particular incident that occurred in January or February of 2017, although N.F. could not pinpoint the exact date. She testified Kraai wore a pair of pants with "holes in the private parts." She testified that while they were seated on the couch, Kraai exposed his penis through the hole in his pants and made her touch his penis. N.F. testified that Kraai had a silver ring "on the tip" of his penis.

Approximately one to two months after this particular incident, N.F. attended a school program on child sexual abuse. She learned that a child

touching an adult's genitalia is inappropriate. Prior to attending this program, N.F. testified, she thought that "every other girl's dad was doing it." N.F. told a friend about Kraai's abuse. The friend informed school officials. The school officials escalated the report appropriately, and N.F. was interviewed at a child advocacy center about the abuse. Police watched a recording of N.F.'s interview and used it as the basis to obtain a search warrant.

The police executed the warrant at Kraai's residence, and they obtained physical evidence substantially corroborating N.F.'s testimony. The police found a number of pornographic DVDs and magazines scattered throughout the house, including in the living room and under the couch cushions. Kraai admitted to owning pornography and admitted he sometimes watched pornography and masturbated while others were in the house (both when he lived with his mother and when he moved to the farm). However, he denied having ever shown pornography to N.F. He admitted that he sometimes left his pornography out so it was visible to others but that he "usually" stored the pornography "[i]n between the wall and [his] couch."

The police seized a pair of blue flannel pajama pants with a hole in the crotch just as N.F. described. To explain the hole in the crotch of his blue flannel pants, Kraai testified that "[t]hey wear out over time." Providing further explanation, he continued: "A lot of the pajama pants I wore under my jeans when it was cold. And they can get caught in barbed wire sometimes; or just going over a fence, they would tear out." He testified that he had "probably ten more pairs of pants that have holes in them." The jury was shown photographs

of the blue flannel pants. The hole in the crotch does not appear to be a rip or tear made accidentally as there is serge stitching on the left and right edges of the hole. Instead, it appears the hole in the pants was intentionally made to allow the penis to be exposed.

As authorized by the search warrant, police photographed Kraai's penis during the search of his house. These photographs were admitted into evidence. The photographs show a silver ring near the tip of Kraai's penis as N.F. described. N.F. testified that the photographs matched the ring she saw on Kraai's penis. Regarding the reason N.F. might have seen his penis (including the silver ring), Kraai testified that his children "have both gone into the bathroom fighting before, lots of times" when Kraai was in the shower or using the toilet. He testified that this happened both at the hog farm and at his mother's house. N.F. testified she never accidentally walked in on her father while his penis was exposed.

N.F.'s knowledge of Kraai's piercing is strongly corroborative of her testimony and strong evidence of Kraai's guilt because it is unlikely N.F. would know of this intimate detail in the absence of sexual abuse. *See, e.g.*, *State v. Retterath*, No. 16–1710, 2017 WL 6516729, at *5 (Iowa Ct. App. Dec. 20, 2017) ("C.L.'s credibility was bolstered by his accurate drawing of the sword tattoo on Retterath's penis, something he would not have been able to remember if Retterath was truthful in his total denial . . . ."); *see also People v. Creasy*, Appeal No. 3–19–0630, 2021 WL 5827791, at *7 (Ill. App. Ct. Dec. 8, 2021) ("[Victim] was also able to testify to the fact that defendant had a piercing and a silver ring on his penis. . . . It is unlikely [she] would have known this if defendant had not

forced her to repeatedly perform sexual acts."); *Wallace v. State*, No. 2511, Sept. Term, 2018, 2020 WL 2731228, at *2, 4, 11 (Md. Ct. Spec. App. May 26, 2020) (uncorroborated testimony of minor victim held sufficient to uphold defendant's rape convictions where evidence included the victim's description of defendant's penis piercing despite defendant's contention that the victim may have seen the piercing accidentally), *cert. denied*, 235 A.3d 39 (Md. 2020); *Delbrey v. State*, No. 05–18–00790–CR, No. 05–18–00791-CR, 2019 WL 3773851, at *1, 3 (Tex. App. Aug. 12, 2019) (mother of child sexual abuse victim testified that when the victim informed the mother about the abuse, the victim described defendant's penis piercing; evidence was sufficient to sustain defendant's conviction despite defendant's argument that victim saw the piercing only in photographs).

Considered in totality, we hold that Kraai's rights have not been "injuriously affected" and he has not suffered a "miscarriage of justice" despite the erroneous noncorroboration instruction. *Marin*, 788 N.W.2d at 836. To "corroborate" means to "strengthen or confirm; to make more certain." *Corroborate, Black's Law Dictionary* (11th ed. 2019) [hereinafter *Black's Law Dictionary*]; *see Veterans Tech., LLC v. United States*, 138 Fed. Cl. 121, 137 n.7 (Fed. Cl. 2018) (applying *Black's Law Dictionary* definition of "corroborate"). A witness's testimony is corroborated when it is "[c]onfirm[ed] or support[ed] by additional evidence or authority." *Corroboration, Black's Law Dictionary*; *see also State v. Bugely*, 562 N.W.2d 173, 176 (Iowa 1997) (stating in the context of corroboration of accomplice testimony that "[c]orroborative evidence may be

direct or circumstantial" and "need not be strong and need not be entirely inconsistent with innocence" so long as it "support[s] some material part" of the testimony in question and "tend[s] to connect the accused to the commission of the crime" (second quoting *State v. Dickerson,* 313 N.W.2d 526, 529 (Iowa 1981))). Here, N.F.'s testimony was corroborated by the physical evidence obtained from Kraai's residence, including the pornography found throughout the home, the flannel pants with a hole cut out of the crotch to expose the penis, and the silver ring near the tip of Kraai's penis. "Since there was some corroboration of the victim's testimony, the challenged instruction, in essence, pertained to a moot point." *Garza,* 231 P.3d at 891. Under the circumstances of this case, we find the error nonprejudicial and harmless. *See Plain,* 898 N.W.2d at 817; *see also Ludy,* 784 N.E.2d at 463 ("Clearly the testimony of the victim was not uncorroborated. . . . The instruction error did not affect the defendant's substantial rights.").

III.

For the foregoing reasons, we affirm Kraai's conviction.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED.**